COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Beales and Senior Judge Annunziata


SHAMECA JACKSON

v.      Record No. 0320-09-3

ROANOKE CITY DEPARTMENT
  OF SOCIAL SERVICES                         MEMORANDUM OPINION[*]
                                                   PER CURIAM
ROBERT JACKSON, SR.                           SEPTEMBER 1, 2009

v.      Record No. 0793-09-3

ROANOKE CITY DEPARTMENT
  OF SOCIAL SERVICES


              FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                         William D. Broadhurst, Judge

              (Rena G. Berry, on brief), for Shameca Jackson.  Shameca Jackson
              submitting on brief.

              (David W. Steidle, on brief), for Robert Jackson, Sr.  Robert
              Jackson, Sr. submitting on brief.

              (William M. Hackworth, City Attorney; Heather P. Ferguson,
              Assistant City Attorney; Diana M. Perkinson, Guardian *ad litem* for
              the minor children; Perkinson and Perkinson, on brief), for appellee.
              Appellee and Guardian *ad litem* submitting on briefs.


       Shameca Jackson (mother) and Robert Jackson, Sr. (father) appeal a decision terminating

their parental rights to their children.  Mother and father argue that the trial court erred in finding

that there was sufficient evidence to terminate their parental rights to their children.  Upon

reviewing the record and briefs of the parties, we affirm the decision of the trial court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

So viewed, the evidence proved that mother and father have three children.[1] On January 30, 2007, the Roanoke City Department of Social Services (DSS) received a child protective services (CPS) complaint that mother lacked the capacity to take care of the children and that father had a substance abuse problem. When a CPS worker came to the house, mother admitted having post-partum depression and was taking medication. Father admitted using crack cocaine for twenty-two years. The CPS worker requested that he take a drug test, but he refused. The CPS worker, mother, and father developed a safety plan and agreed that mother would not be left alone with the children.

On February 1, 2007, the court entered a preliminary child protective order, which required father and mother to submit to random drug and alcohol testing, complete substance abuse assessments and psychological evaluations, cooperate with any recommended treatment, fully cooperate with DSS, allow DSS access to the children and the home, and provide appropriate supervision for the children at all times. Subsequently, father twice tested positive for cocaine, and mother tested negative for both drugs and alcohol. Despite the safety plan and the preliminary protective order, mother was alone with the children on multiple occasions.

On February 13, 2007, the court entered an emergency removal order because of the parents' failure to follow the previous order. The CPS complaint against mother and father was founded at a Level One based on physical neglect and inadequate supervision for all three children.

---

[1] At the time of the initial complaint, the children were approximately two years old, one year old, and one month old.

Once the children were in DSS's custody, DSS required mother and father to seek and maintain appropriate and stable housing, attend scheduled visitations, cooperate fully with DSS and any other service provider, and provide for the financial support of her children. Mother also was required to participate in parenting classes and demonstrate the skills learned in that class. Father also was required to maintain stable employment and income, complete a substance abuse assessment and participate in any recommended treatment, and participate in anger management class. Neither parent was able to meet these goals. They could not maintain stable and appropriate housing. At the time of the trial, both were in homeless shelters. Father did not visit his children regularly, and when he did, there were concerns about his interactions with them. Mother visited regularly; however, there were concerns about her interactions with the children. Mother frequently needed the assistance of a DSS staff member to help her manage all three children. Father did not follow through with the substance abuse treatment and repeatedly tested positive for cocaine from February 2007 through April 2008. Father also did not complete the Domestic Violence Alternatives Program.

On February 28, 2007, mother underwent a psychological evaluation by Dr. Klair Mundy. Dr. Mundy concluded that mother "does not have the cognitive capacity, nor the personality style, that would be conducive to providing her children with a safe and secure home environment on her own. She would need constant 24-hour care and intervention to assist her in that capacity." At trial, Dr. Mundy did not believe that her conclusion would change in the near future. In September 2008, mother was hospitalized in a psychiatric facility.

DSS provided mother and father with numerous services, including bus passes, housing lists, financial assistance for rent and electric bills, and referrals to service providers for parenting classes, psychological evaluations, anger management classes, and substance abuse assessments. Mother also was referred to a mental health support worker, who transported her to appointments,

took her to the YMCA to exercise, assisted in managing her medication and nutrition, and was available for daily telephone contact.

On June 23, 2008, the juvenile and domestic relations district court terminated the parental rights of mother and father. Both parents appealed, and on January 9, 2009, the trial court heard evidence and argument from the parties. On January 21, 2009, the trial court entered an order terminating the parents' parental rights pursuant to Code § 16.1-283(B) and 16.1-283(C). Mother and father timely noted their appeals.

## ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

The trial court terminated mother's and father's parental rights based on Code § 16.1-283(B)[2] and 16.1-283(C)(2).[3] Mother and father both argue that the evidence was insufficient to terminate their parental rights.

One of the reasons that the children entered foster care was because of mother's failure to adequately supervise and parent her children. She was unable to prepare the youngest child's formula. She admitted having problems with post-partum depression and was taking an anti-depressant. During the initial home visit, the CPS worker noticed that mother was unable to supervise her two oldest children, who tipped over the baby in her seat and caused her to fall. When mother visited the children, she needed assistance from the DSS staff to help her attend to the children's basic needs. Dr. Mundy testified that mother had severe limitations and needed assistance from others in order to function on a daily basis. Dr. Mundy also was concerned that mother's need to have someone in her life was so great that she put that need above her safety

---

[2] Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and

> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

[3] Code § 16.1-283(C)(2) states that a person's parental rights may be terminated if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

and her children's safety. For example, mother did not recognize the problems and danger with having father, who had substance abuse problems, in the house with the children. Dr. Mundy also concluded that mother's limitations were not likely to improve anytime in the future.

The children also entered foster care because of father's substance abuse problem. Father admitted that when he was using drugs, he was more concerned with himself and his needs than those of his children. His drug problem affected his ability to maintain employment. At the time of the hearing in the trial court, father was unemployed. Father failed numerous drug tests while the children were in foster care. In November 2008, father entered a Salvation Army Program, but he had not been drug screened since his entry into the program.

"[S]ubsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 270-71, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)). The trial court noted that mother was unable "to correct the problems that she faces" and that father "has not been able to get rid of that addiction within a reasonable period of time."

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Id. at 271, 616 S.E.2d at 772 (quoting Winslow, 40 Va. App. at 562-63, 580 S.E.2d at 466).

DSS provided numerous services to the parents and required that the parents meet several goals. However, neither mother nor father was able to meet DSS requirements. They did not have adequate and stable housing. From February through August 2007, they had six residences.

DSS helped them obtain a one-bedroom apartment in March 2008, but they were evicted in September 2008. Since September 2008, they lived in homeless shelters. Father did not have stable employment, and he had not completed the Domestic Violence Alternatives Program. Although mother regularly visited the children, father did not. DSS had concerns about both parents when they visited their children.

The trial court found that mother tried to remedy her problems, but "given her mental, emotional condition and mental deficiency," the trial court did not "have any reasonable expectation of sufficient improvement to a level that would enable her to be a fit parent." Likewise, the trial court found that despite the services offered by DSS and father's efforts at the Salvation Army Program, father had not improved his situation substantially because "he's either been unable or unwilling, certainly unwilling to comply within a reasonable period of time to correct these issues." The trial court found that "the circumstances of the parents respectively are [not] going to change in any time reasonably."

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

At the time of the hearing, the children had been in foster care for approximately two years. The two older children had severe speech delays when they entered foster care, but they have improved and all of the children are doing well in foster care.

The evidence was sufficient to terminate the parental rights of mother and father.

CONCLUSION

For the foregoing reasons, we affirm the trial court's rulings.

Affirmed.