COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Beales and Senior Judge Annunziata


LINDA SAIFI

                                                        MEMORANDUM OPINION[*]
v.        Record No. 0736-10-4                               PER CURIAM
                                                          AUGUST 10, 2010
FAIRFAX COUNTY DEPARTMENT
  OF FAMILY SERVICES


                  FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            Charles J. Maxfield, Judge

          (Michael S. Arif; Martin, Arif & Greene, PLC, on brief), for
          appellant.

          (David P. Bobzien, County Attorney; Peter D. Andreoli, Jr., Deputy
          County Attorney; Deborah C. Laird, Assistant County Attorney;
          Suzanne Gwen Hruby, Guardian *ad litem* for the minor children, on
          brief), for appellee.


        Linda Saifi appeals the trial court's order approving foster care plans with goals of adoption

for her grandchildren.  Saifi argues that the trial court erred in finding that (1) changing the goal of

the foster care plan to adoption, as opposed to placement with relatives, was in the best interests of

D.F. and K.C.; and (2) Saifi failed to substantially remedy the situation that led to the children's

placement in foster care.[1]  Upon reviewing the record and briefs of the parties, we conclude that

this appeal is without merit.  Accordingly, we summarily affirm the decision of the trial court.

See Rule 5A:27.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] We refer to the children by their initials.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

K.C. was born in January 2000, and D.F. was born in November 2000. From their birth until 2002, the children lived with their mother, Keisha Carr (mother), and their father, Davon Fields. They lived in shelters, hotels, and with friends of their parents. They were dirty, hungry, and left unattended for long periods of time.

Saifi, the paternal grandmother, began to care for the children. In April 2003, the Fairfax County Juvenile and Domestic Relations District Court (the JDR court) found that the children were in need of services and temporarily transferred custody to the Fairfax County Department of Family Services (the Department).[2] In May 2003, the JDR court transferred custody of the children to Saifi. The Department provided protective supervision. Saifi and mother were ordered to cooperate with the Department, obtain psychological evaluations and parent-child assessments, and obtain a home study.

In December 2006, mother filed a motion for a home study. On May 21, 2007, the JDR court found that the children's placement with Saifi was unacceptable because Child Protective Services (CPS) was investigating Saifi. The JDR court transferred custody to mother with a thirty-day transition period. On June 5, 2007, the Department filed an emergency motion seeking to transfer the children's custody back to the Department. On June 7, 2007, the JDR court found that mother was homeless and Saifi was unable to care for the children. The JDR court transferred custody of the children to the Department. At the next hearing in August 2007,

---

[2] Fields was incarcerated when the children first came into foster care and died in July 2009.

the Department filed foster care plans with a goal of return home and a concurrent goal of placement with relatives. Mother and Saifi were ordered to obtain psychological evaluations, parent capacity evaluations, and alcohol and drug services evaluations. They also were ordered to follow any treatment recommendations and cooperate with the Department.[3]

Several review hearings were conducted over the next year and a half until the Department filed petitions to terminate parental rights and submitted foster care plans with goals of adoption. On October 1, 2009, the JDR court terminated mother's parental rights and approved the foster care plans with the goals of adoption. Mother and Saifi appealed to the trial court.

On January 26, 2010, after a two-day trial, the trial court terminated mother's parental rights and approved the foster care plans with the goals of adoption. The trial court found that Saifi was not a viable relative placement for the children. Saifi timely noted her appeal.[4]

ANALYSIS

Goal of foster care plans

Saifi argues that the trial court erred in approving the foster care plans with goals of adoption, as opposed to goals of placement with relatives. Saifi contends the trial court erred in finding that the change of goal was in the children's best interests.

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

---

[3] Saifi completed the court-ordered evaluations, but refused to participate in recommended individual therapy.

[4] Mother also appealed the trial court's ruling. See Carr v. Fairfax Cnty. Dep't of Family Servs., No. 0351-10-4 (Va. Ct. App. Aug. 10, 2010).

Before terminating a parent's rights, "the court shall give a consideration to granting custody to relatives of the child, including grandparents." Code § 16.1-283(A). The "Department has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Logan, 13 Va. App. at 131, 409 S.E.2d at 465.

The trial court received evidence regarding Saifi as a possible placement for the children. Saifi's home was not a suitable environment for the children. The children had lived with Saifi for years, but had to be removed from her home because it was dirty and cluttered. Saifi struggled with hoarding. There was no place to walk, and the children had no place to eat. Cockroaches infested the apartment. There were times when Saifi would not shower for days because her bathtub was too cluttered. On several occasions, the Department helped her clean her home, but it would become cluttered and dirty again. Her home had not passed inspection, and she faced eviction several times.[5]

In addition, Saifi had a history of violence. CPS had investigated her home on several occasions. Her own children had been placed in foster care. Saifi was charged with voluntary manslaughter after stabbing her husband to death. In June 2007, D.F. broke her arm when Saifi grabbed and pulled her.

Saifi also has physical disabilities and could not keep up with the children. She has problems with her back, knees, and shoulder, which limit her mobility. She takes Vicodin, a prescription painkiller that makes her drowsy.

---

[5] By the time of the trial, Saifi's home passed inspection.

Saifi took parenting classes; however, she needed the Department's assistance to implement the necessary parenting techniques for D.F. and K.C. The children have special needs, and Saifi could not provide them with the structure and consistency that they needed.

In June 2007, the children were found walking home alone, in dirty clothing, on a highly traveled, multi-lane highway. Saifi thought that they went to school, but they missed the bus. Saifi was not home.

The trial court acknowledged that Saifi loved and cared for the children. Nevertheless, the trial court found that Saifi was not going to be able to meet the children's needs. The trial court stated, "I think the [children's] needs are going to get much greater shortly, and her [Saifi's] ability to take care of the children to date has been marginal at best."

The trial court considered placement with Saifi, but found that it was in the children's best interests not to be placed with relatives. The trial court did not err in approving the foster care plans with the goals of adoption.

<u>Substantially remedying the situation</u>

Saifi argues that the trial court erred in finding that she had not remedied the conditions that led to the children being placed in foster care. When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." <u>Logan</u>, 13 Va. App. at 128, 409 S.E.2d at 463 (1991).

A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

Saifi contends she made "significant progress" toward providing a stable environment for the children after the statutory twelve-month period. She argues that although her home was cluttered and not suitable for the children in 2007, the home passed inspection before the hearing in the trial court. She also asserts that she is capable of raising the children. She took parenting classes and has a support network through her church. She also said that she was willing to live with the children's mother in order to prevent a termination of parental rights.

Although Saifi's house passed inspection before the hearing in the trial court, it barely passed inspection. Saifi has a history of hoarding and being unable to keep her house clean. In addition, Saifi has a history of violence, and needed the Department's assistance in parenting K.C. and D.F. "'[P]ast actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)).

At the time of the trial, the children were in foster care for approximately thirty months. They were doing well and receiving the necessary services. The trial court was concerned that Saifi would not be capable of handling the children as they were getting older, and explained, "The difference between taking care of a six-year old girl and a twelve-year old girl who has got impulsivity problems and educational problems, are dramatic." In addition, the trial court found as follows: "I just do not believe based upon this evidence, and I think the evidence is overwhelming, that the grandmother is going to be adequate to meet these children's needs in the future."

The trial court did not err in finding that Saifi failed to substantially remedy the conditions that led to the children being placed in foster care.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed.  Rule 5A:27.

<u>Affirmed.</u>