COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Powell and Senior Judge Clements


DALE GENE LEE

                                                    MEMORANDUM OPINION[*]
v.       Record No. 2364-10-3                            PER CURIAM
                                                       APRIL 19, 2011
LYNCHBURG DIVISION OF SOCIAL SERVICES


                    FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                              Mosby G. Perrow, III, Judge

              (Killis T. Howard; Margaret B. McNamara, on briefs), for appellant.

              (Joyce M. Coleman; James A. Downey, Jr., Guardian *ad litem* for the
              minor children; M. Crawford Keenan, CHINS Counsel for T.L.;
              Eric G. Peters, CHINS Counsel for N.L.; James J. Angel, CHINS
              Counsel for M.L., on brief), for appellee.


       Dale Gene Lee (father) appeals an order terminating his parental rights to N.L. and M.L. and

placing T.L. in permanent foster care.[1]       Father argues that the trial court erred by (1)

terminating his parental rights to N.L. because the Lynchburg Division of Social Services (LDSS)

failed to prove that pursuant to Code § 16.1-283(C)(2), father was, without good cause, unwilling or

unable, within a reasonable period of time, to remedy substantially the conditions which led to or

required continuation of the foster care placement; (2) terminating his parental rights to M.L.

because LDSS failed to prove that pursuant to Code § 16.1-283(C)(2), father was, without good

cause, unwilling or unable, within a reasonable period of time, to remedy substantially the

conditions which led to or required continuation of the foster care placement; (3) placing T.L. in

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

       [1] The children will be referred to by their initials.  T.L. was born in 1994, N.L. was born
in 1996, and M.L. was born in 1997.

permanent foster care because LDSS failed to prove that the placement was in T.L.'s best interests; and (4) denying father's motion to strike the evidence because of LDSS's failure to demonstrate the requisite showings under Code § 16.1-283(C)(2). Upon reviewing the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

LDSS first became involved with the family in 2005 in order to assist the family and Belinda Lee, the children's mother, who had multiple sclerosis. Father was belligerent with the home health workers. Father was "volatile and unpredictable." LDSS removed the children from the home in December 2006 due to father's alcoholism, the conditions Ms. Lee was in, and the fact that the children, not father, were providing care for Ms. Lee. After the children's removal, father successfully completed substance abuse treatment and participated in counseling. The children were returned to his custody in August 2008. The family received on-going services until February 2009. Mother's multiple sclerosis had deteriorated, and she moved to the Lynchburg Health and Rehabilitation Center (LHRC).

On April 17, 2009, LDSS removed the children from father's custody again. LDSS had received child protective service complaints based on incidents occurring on April 3 and April 13, 2009. Father was intoxicated and drove the children to the LHRC to visit their mother. Father and T.L. were involved in an altercation on one day, and on another day, father, who was intoxicated, told the staff not to give the mother her medicine so that he could move on with his life. Ms. Lee died on May 10, 2009.

- 2 -

Prior to the children's removal, father allowed M.L. to go to North Carolina with a woman he met on the internet. Father, the children, and the girlfriend then went to Virginia Beach. While in Virginia Beach, he told the children that he "didn't want the kids to be around her [the girlfriend] any more," and he left the girlfriend. He had no money to return home, so father contacted his landlord in Lynchburg to buy bus tickets for them. The children were out of school for three weeks during this time period.[2]

LDSS required father to engage in counseling, return to ARISE substance abuse center for treatment, and cooperate with intensive outpatient treatment. Father was belligerent with the social worker and cursed and threatened her. The social worker stated, "he was not cooperative with services at all."

There were problems with father visiting the children. In addition to his drinking problems, father told LDSS that he has agoraphobia, or a fear of people. LDSS attempted to find a place to meet father's needs; however, he failed to appear for after-hours visits at the LDSS building, even though there were no other visits occurring at the time. LDSS also arranged for visits at a park until the weather became too cold. There also had been problems with visitations at a residential placement home for the children because of father's behavior when he became "aggressive" and started cursing.

The April 2009 removal was based on abuse and neglect petitions. The Lynchburg Juvenile and Domestic Relations District Court (the JDR court) dismissed the abuse and neglect petitions, but directed the children's guardian *ad litem* to file "Child in Need of Services" (CHINS) petitions. LDSS also filed petitions for termination of parental rights for M.L. and N.L. and a petition for permanent foster care for T.L. in the JDR court. After a hearing on the CHINS petitions in November 2009, the JDR court terminated father's parental rights to M.L. and N.L.

---

[2] One of the three weeks was spring break.

pursuant to Code § 16.1-283(C)(2) and placed T.L. in permanent foster care. Father appealed to the trial court.

At trial, the children's counselors testified that the children were doing well. At the conclusion of LDSS's evidence, LDSS asked the trial court to speak with the children in chambers. Father agreed to the trial court speaking with the children and told the trial court that he would support the children's wishes, as long as the trial court explained the "full ramifications of the termination of parental rights." The trial court spoke with the children individually *in camera*. M.L. and N.L. wanted their father's parental rights to be terminated and to be adopted by their foster family. T.L. wanted to remain in contact with his father, but wanted to stay in permanent foster care. Once father learned the children's wishes, he changed his mind and did not agree to defer to the children's wishes.

After hearing all of the evidence and argument, the trial court terminated father's parental rights to M.L. and N.L. and placed T.L. in permanent foster care. This appeal followed.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

Father argues that the trial court erred in terminating his parental rights to M.L. and N.L. pursuant to Code § 16.1-283(C)(2) and in placing T.L. in permanent foster care. Father also argues that the trial court erred in denying his motion to strike the evidence because of LDSS's failure to demonstrate the requisite showings under Code § 16.1-283(C)(2).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005)

(quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580

S.E.2d 463, 466 (2003)).

LDSS has been involved with this family intermittently since 2005. LDSS offered numerous services to father, but to no avail. Father refused to cooperate with LDSS and was often belligerent with the social workers. His alcoholism and anger toward others contributed toward his behavior. At trial, father testified that he had not consumed alcohol in eleven months, and he argued that LDSS failed to prove that he was still drinking. However, father failed to cooperate with LDSS and argued with them. He refused to sign releases for them to speak with his counselors and doctors. The social worker testified that she had to communicate with father via letters because he would yell and curse at her in telephone calls. Father failed to follow LDSS's recommendations and refused treatment. Father testified that he thought LDSS "over serviced us." The social worker testified that father told her that if he could get T.L. back, then he would agree to terminate his parental rights of M.L. and N.L. so they could be adopted.

The social worker also explained that father's alcoholism was not the only reason that they were seeking termination of parental rights. The social worker testified that LDSS is concerned about father's ability to provide stability for the children. He claimed to suffer from numerous ailments, including agoraphobia, cirrhosis of the liver, diabetes, depression, bi-polar manic and severe with psychotic ailments. He had no transportation, since his mother, who acted as his driver, died in July 2010. He did not regularly visit the children. He also refused to accept any responsibility for his actions that led to the children being placed in foster care. Father did not remedy his situation in order to regain custody of the children.

Meanwhile, the children were doing well in foster care. They told the trial court that they did not want to live with father anymore. M.L. and N.L. wanted to be adopted, and T.L. wanted to remain in permanent foster care.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Credible evidence supports the trial court's rulings to terminate father's parental rights to M.L. and N.L. and to place T.L. in permanent foster care.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.