COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Kelsey, Beales and Senior Judge Clements

JAMES DEWBERRY

v.      Record No. 0923-13-4

WINCHESTER DEPARTMENT OF SOCIAL SERVICES          MEMORANDUM OPINION*
                                                        PER CURIAM
TAMMY DEWBERRY                                      DECEMBER 10, 2013

v.      Record No. 0960-13-4

WINCHESTER DEPARTMENT OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
John E. Wetsel, Jr., Judge

(David L. Hensley; Gunter Hensley, P.C., on brief), for appellant
James Dewberry.

(Timothy M. Mayfield; Harrison & Johnston, P.L.C., on brief), for
appellant Tammy Dewberry.

(Russell A. Fowler; Nancie G. Kie, Guardian *ad litem* for the minor
children; Winchester Law Group, P.C.; Pond Athey Law, P.C., on
briefs), for appellee.


James Dewberry (father) and Tammy Dewberry (mother) appeal orders terminating their

parental rights to six of their children. Both father and mother argue that the trial court erred in

terminating their parental rights because the evidence was insufficient to support such a finding.

Upon reviewing the record and briefs of the parties, we conclude that these appeals are without

merit. Accordingly, we summarily affirm the decisions of the trial court. See Rule 5A:27.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

Father and mother are the parents to the six children who are the subject of these appeals. In 2009, the Fauquier County Department of Social Services became involved with the family because they were homeless. The case subsequently was transferred to the Winchester Department of Social Services (the Department). On November 9, 2010, the Department removed the parents' oldest child from their custody because of a domestic violence incident involving that child. On February 24, 2011, the Department removed the other five children due to another incident of domestic violence involving one of the children. The Department also removed the children because of the home's volatility and father's anger issues. At the adjudicatory hearings, father and mother stipulated that the Department could prove its case by a preponderance of the evidence, but they did not admit the allegations.

During 2011, father and mother participated in psychological and parenting evaluations, counseling, parent mentoring, and family team meetings.

As of November 2011, the Department believed that some improvement was being made. On December 5, 2011, the Department allowed the three youngest children to reside with the parents. The next day, the parents contacted the Department and asked that the children be placed back in foster care because the stress level was too high.

From 2009 until 2012, the Department assisted father and mother with housing. Father and mother moved four times during this time period. In December 2011, they were evicted from their fourth house and lived in a hotel room with the mother of father's oldest child, Ruth Ann Little, and father's oldest child, who was an adult. In the spring of 2012, the Department

secured a HUD unification voucher, which would have enabled father and mother to live in a four or five bedroom house at little or no cost. The restrictions on the voucher prevented Little from living with them, since she was not part of the nuclear family. Instead of using the voucher, father and mother moved with Little to Florida.

Shortly after arriving in Florida, mother gave birth to the parties' seventh child. Child protective services in Florida removed the baby from the parents' care at the hospital because of father's conduct.

Since the parents moved to Florida, the Department arranged for a home study through the Interstate Compact for the Placement of Children (ICPC). Father and mother lived in a two-bedroom mobile home with Little. The home study concluded the children should not be placed in the home "due to the lack of room to add six children and the parents' lack of financial ability to provide for the children."

Father and mother did not attend the hearings relating to the termination of their parental rights. The parties presented their cases by proffer. The trial court terminated father's and mother's parental rights to their six children living in Virginia. The trial court found that father and mother did not "adequately address their mental health needs." The parents did not follow through with counseling as recommended. The trial court also noted that father admitted he failed to take his medication between November 2011 and April 2012. Father also admitted that when he does not take his medication, his behavior is "out of control" and that he has "a potential to be violent." Mother also admitted she did not take her medication as prescribed. Furthermore, the trial court was concerned about the parents' housing situation, especially since their Florida residence was denied ICPC approval. It also was concerned about father's and mother's ability to financially support the children, as father had a history of unstable employment and mother was unemployed. Based on the evidence presented, the trial court

- 3 -

terminated father's and mother's parental rights pursuant to Code § 16.1-283(B) and (C)(2). These appeals followed.

## ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

*Code § 16.1-283(B)*

Father and mother argue that the evidence was insufficient to terminate their parental rights pursuant to Code § 16.1-283(B), which states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

"[S]ubsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 270-71, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

The Department originally removed the children because of concerns about domestic violence and father's anger issues. The oldest child and father had been engaged in a physical altercation and another child sustained injuries while in the parents' care.[1] The parents admitted that the Department had sufficient evidence to prove its abuse or neglect case at the adjudicatory hearings.

The trial court found that father and mother "suffer from mental and emotional problems which make it difficult for them to maintain a viable independent household for themselves, much less themselves and six, not seven, children." Neither father nor mother was compliant with their medication. Father admitted that if he did not take his medication, his behaviors were "out of control," that he has "a potential to be violent," that he "acts like a freaking idiot," and that he is "not in [his] right mind."

The record includes evidence of father threatening social services workers and those involved in the case. Father was diagnosed with bipolar disorder and antisocial personality disorder. Dr. Bernard Lewis, a licensed clinical psychologist, performed a psychological and parenting evaluation on father and concluded, "Overall, the prognosis of Mr. Dewberry to make the changes in his anger, temper, aggression, interpersonal insensitivity, and self-centeredness that would enable him to be a minimally adequate parent is poor."

Dr. Carrie Nowell, a clinical psychologist, performed a psychological evaluation on mother. She diagnosed mother with major depressive disorder and moderate adjustment disorder with anxiety. Dr. Nowell concluded that mother could benefit from individual psychotherapy to improve her coping mechanisms, her social skills, and her parenting deficits. Mother went to three counseling sessions before deciding to cease participation.

---

[1] Father and mother argued that the child was hurt at school and produced the school's accident report. The child reported that father hit him with a plate.

As the trial court noted, "'past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)).

The trial court concluded that the children had been neglected or abused. The parents did not show that they had substantially dealt with their mental health issues. The trial court stated, "It is not reasonably likely that the conditions that resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the children's safe return to the biological parents within a reasonable period of time."

Contrary to father's and mother's arguments, there was sufficient evidence for the trial court to terminate their parental rights pursuant to Code § 16.1-283(B).

*Code § 16.1-283(C)(2)*

Father and mother argue that the evidence was insufficient to terminate their parental rights pursuant to Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

The Court has distinguished subsection B terminations from subsection C terminations:

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

- 6 -

Toms, 46 Va. App. at 271, 616 S.E.2d at 772 (quoting Winslow, 40 Va. App. at 562-63, 580 S.E.2d at 466).

The Department required father and mother to maintain stable and adequate housing. In late 2011, father and mother were living in a four-bedroom house, but they were unable to maintain the house. This was their fourth home in approximately two years. They subsequently lived in a hotel room with father's oldest child and Little, the mother of father's oldest child. The hotel room was not suitable for the children. Despite the Department's ability to secure a HUD voucher for a four or five bedroom home for the family, father and mother moved with Little to Florida. At the time of the hearing, they lived with her in a two-bedroom mobile home, which was denied ICPC approval.

In addition to their housing difficulties, father was unable to maintain stable employment. He had a myriad of jobs in Virginia and Florida and could not provide sufficient financial support for the family. Mother was unemployed.

As stated above, the trial court also was concerned about father's and mother's inability to "adequately address their mental health needs, which directly affects their ability to parent. They have failed to demonstrate that they can meet the basic needs of their children."

As of March 26, 2013, the date of the trial, the parties' oldest child had been in foster care for approximately twenty-eight months, and the other five children had been in foster care for approximately twenty-five months. The guardian *ad litem* reported, "Overall, the children are doing well."

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

During the time that the children were in foster care, father and mother were unable to remedy the conditions that led to the children being placed in foster care. Again, contrary to father's and mother's arguments, there was sufficient evidence for the trial court to terminate their parental rights pursuant to Code § 16.1-283(C)(2).

## CONCLUSION

For the foregoing reasons, the trial court's rulings are summarily affirmed. Rule 5A:27.

<u>Affirmed.</u>