## Salem

### MARGIE SPARKS MARTIN

v.

### PITTSYLVANIA COUNTY DEPARTMENT OF SOCIAL SERVICES

No. 1032-85

Decided September 2, 1986

COUNSEL

John L. Saxon (Norman B. Sales; Virginia Legal Aid Society, Inc., on brief), for appellant.

Robert P. Vines (Vansant, Millner & Vines, on brief), for appellee.

OPINION

**KOONTZ, C.J.** — This case involves a controversy between the Pittsylvania County Department of Social Services (hereinafter referred to as "appellee" or "DSS") and Margie Sparks Martin concerning the custody of her son, John, born on June 20, 1976. By order dated June 23, 1985, the circuit court denied Mrs. Martin's petition for custody and directed that the child be placed in permanent foster care pursuant to Code § 63.1-206.1, subject to the visitation rights of Mrs. Martin. Mrs. Martin appeals from that order.

*Procedural Background*

The procedural background of this case is somewhat involved and we cite it to illustrate the events which led to the entry of the order on appeal. As a result of physical abuse of the child by the father, the Pittsylvania County Juvenile and Domestic Relations District Court, by order dated May 20, 1981, placed John in the appellee's custody. Subsequently, on December 30, 1982, that court granted the petition of the appellee to terminate the parental rights of Mrs. Martin. On appeal, the circuit court denied the petition to terminate Mrs. Martin's parental rights by order dated May 26, 1983. Thereafter, the appellee filed a foster care plan in the juvenile court with the goal being to return John to the custody of Mrs. Martin. The juvenile court approved the plan in November, 1983, but upon review of it in June, 1984, rejected it on the ground that Mrs. Martin would not be a proper custodial parent and ordered the appellee to file a plan with adoption as the goal. At that time Mrs. Martin unsuccessfully sought custody for herself. She appealed both of these determinations to the circuit court. Pending the hearing on appeal, the appellee filed a petition in the circuit court to terminate Mrs. Martin's parental rights. Mrs. Martin's appeal and the appellee's petition were consolidated and heard *ore tenus* in February and June, 1985. A guardian *ad litem* was appointed to represent John's interest in these proceedings. On June 23, 1985, the circuit court denied the petition to terminate Mrs. Martin's parental rights, denied her petition for

custody, and directed that John be placed in *permanent foster care*.

During this four year period John remained in foster care and had visitations with his mother. The father voluntarily surrendered his parental rights under an entrustment agreement dated November 5, 1982, and consequently his rights were not involved in the proceedings below and are not involved in this appeal. There is no appeal from the denial of the petition to terminate the parental rights of Mrs. Martin.

### Factual Background

At the hearing in the circuit court various caseworkers and mental health professionals, in addition to Mrs. Martin, were called as witnesses. The record reveals that Mrs. Martin had three children by her marriage to Mr. Martin. A fifteen year old son is in the custody of his father and an older daughter is in the custody of Mrs. Martin's brother. Mrs. Martin has little, if any, contact with these children. At the time of the abuse of John by his father in May 1981, Mrs. Martin had gone to Baltimore, Maryland for medical treatment. The precise reason for this trip is unclear from the record. Mrs. Martin testified that she had bronchitis and allergies and that she was treated in the emergency room of a hospital in Baltimore for this condition. She had been taking medication for "nerves" but had discontinued taking the medication. The children had been left in the care of the father's sister, who subsequently relinquished custody of John to his father. Upon learning of the abuse of John, Mrs. Martin returned but has not regained custody of him. Throughout these proceedings Mrs. Martin has remained separated from her husband though not divorced from him.

It is clear from the record that Mrs. Martin has never physically abused John. There is an emotional tie between the two. Pursuant to the first foster care plan, Mrs. Martin, according to her caseworker, for several years, until April 1984, made reasonable progress in establishing a stable home, attending parenting classes and providing care for John during home visitations. At that time John was concerned about alleged arguments between his mother and her boyfriend, that he had to do household chores, and that his mother had placed him inside garbage dumpsters to

locate junk. This evidence was admitted by the trial court to establish the reasons the appellee changed the foster care plan goal to adoption rather than return of custody to Mrs. Martin. Mrs. Martin explained that John was in no danger during arguments with her boyfriend, that she considered household chores to be beneficial training, and that she often sold junk for extra income. Her regular income consisted of a monthly social security disability check and food stamps. We do not find that any of these matters were the basis of the trial court's denial of her petition for custody. Furthermore, the issue of their admissibility into evidence is not before us.

The crucial evidence came from the mental health professionals. It is undisputed that Mrs. Martin is mildly to moderately mentally retarded. Her therapist, Gloria Culley, testified that Mrs. Martin could function as a parent but would need supervision and assistance under stressful circumstances. Dr. Ashby, a psychiatrist, testified that Mrs. Martin "does not have the necessary capability to assume responsibility for the custody and care of her son at the present time and likely as not in the foreseeable future." At the direction of the trial judge, Mrs. Martin and John were seen for evaluation by Dr. Frazier, a child psychiatrist. Dr. Frazier testified that John "should not be considered retarded but should be considered a child who is on the low side of average but who needs help with verbal skills." He further testified that "a socially and intellectually stimulating program or environment" would help to improve verbal and arithmetic skills. Dr. Frazier further testified that Mrs. Martin needs "support in parent managing, assertive discipline and to be instructed in the various needs of the different levels of development as he grows," and for that "I think she needs help in managing him and that should continue throughout his life as a child until he becomes an adult." Dr. Frazier testified, however, that severing the maternal relationship would be detrimental to John, but that he should remain in foster care.

Mrs. Martin, in her brief, asserts that there are three issues presented to us in her appeal:

1. In a child custody proceeding involving the natural mother and the local welfare department (DSS), may the court *permanently* deprive the mother of custody without clear and

convincing evidence of her unfitness as a parent?

2. In a child custody proceeding involving the natural mother and DSS, may the court *permanently* deprive the mother of custody based solely upon the fact that she is mildly mentally retarded without any evidence that she has abused or neglected the child or has been incapable of caring for the child due to such retardation?

3. Is the court's finding in this case that the natural mother was incapable of assuming physical and legal custody of her son supported by substantial evidence on the record?

*Discussion*

■ We first consider Mrs. Martin's contention that the trial court's finding that she was incapable of assuming physical and legal custody of John is not supported by substantial evidence. We review the record to determine whether there is clear and convincing evidence to support the determination of the trial court. Under familiar principles we view that evidence and all reasonable inferences in the light most favorable to the prevailing party below. Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it. *Simmons v. Simmons*, 1 Va. App. 358, 361, 339 S.E.2d 198, 199 (1986).

■ It is well settled that in custody cases involving a controversy between parent and non-parent, there is a presumption that the best interests of the child will be served when the child is placed in the custody of a fit parent with a suitable home. *Judd v. Van Horn*, 195 Va. 988, 995-96, 81 S.E.2d 432, 436 (1954).

■ It is necessary to draw a clear distinction between the *Judd* rule and those cases cited by Mrs. Martin which involve the termination of parental rights.

The termination of parental rights is a grave, drastic, and irreversible action. When a court orders termination of parental rights, the ties between the parent and child are severed forever and the parent becomes "a legal stranger to the child."

*Lowe v. Richmond Dept. of Public Welfare*, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986), (quoting *Shank v. Dept. of Social Services*, 217 Va. 506, 509, 230 S.E.2d 454, 457 (1976)). With the enactment of Code § 16.1-283 the termination of parental rights must promote the best interests of the child, and where a determination is made that the factors enumerated in the statute are present, such a determination in a given case is tantamount to a finding of parental unfitness. No further finding of parental unfitness is required by the court. *Knox v. Lynchburg Division of Social Services*, 223 Va. 213, 220, 288 S.E.2d 399, 403 (1982).

In the context of the sufficiency of the evidence to support the trial court's denial of Mrs. Martin's custody petition, her reliance on these termination cases is misplaced. The child had been placed previously in foster care and would remain in foster care if she were unsuccessful in her custody petition. In that context termination of parental rights is not at issue.

In addition, where a prior order formally has divested a parent of custody, the *Judd* presumption is not applicable and the burden rests on the parent to show that circumstances have so changed that it is in the best interests of the child to return custody to the parent. *Dyer v. Howell*, 212 Va. 453, 456, 184 S.E.2d 789, 792 (1971). That burden must be met by clear and convincing evidence which was recently defined as follows:

> [T]hat measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.

*Gifford v. Dennis*, 230 Va. 193, 198 n.1, 335 S.E.2d 371, 373 n.1 (1985).

We now review the record to determine whether Mrs. Martin carried her burden to establish that John's best interests would be served by a return of custody to her.

As previously noted, the evidence established that John has remained in foster care for many years and that Mrs. Martin has been unable to establish a suitable home for him. While there is

an emotional tie between them, the psychological evidence established beyond question that she is mildly to moderately retarded, would need supervision and assistance under stressful circumstances, and that throughout his life as a child she would need help in managing and disciplining John. Mrs. Martin's separation from her other children, her apparent inability to profit from parenting classes, the length of time which the child has remained in foster care, and the repeated denial of her custody petitions in the lower courts all evince her inability to provide a suitable home for the child. The psychological evidence established that John's best interests would be furthered by his remaining in a stable placement with the retention of the parental relationship with his mother through visitations and the possibility of a future return of custody to her. Accordingly, we find no error in the trial court's denial of Mrs. Martin's custody petition.

■ It is unnecessary to resolve the merits of the remaining two issues raised by Mrs. Martin in this appeal because we find that the trial court lacked jurisdiction to order a placement in permanent foster care pursuant to Code § 63.1-206.1. While not raised specifically by Mrs. Martin, lack of jurisdiction may be considered by an appellate court of its own motion. 1B Michie's Jurisprudence *Appeal and Error* § 107 (1980). Under the facts of this case, we are compelled to do so.

In the proceedings below, the trial court had no petition before it seeking a *permanent* foster care placement. The appellee had sought termination of Mrs. Martin's parental rights; Mrs. Martin had appealed a plan with adoption as its goal, and had appealed the denial of her custody petition by the juvenile court. None of these issues presented the trial court with the dispositional alternative of *permanent* foster care. Those dispositional alternatives are initially found in Code § 16.1-279, and a final order of foster care placement had been entered. Thereafter, it was incumbent upon the appellee, pursuant to Code § 16.1-281(B), to file an appropriate plan for permanent foster care upon which Mrs. Martin had the right to petition the court to review the plan. It is implicit in the statutory scheme of Code §§ 16.1-281 and 16.1-282 (providing for foster care review by the court) that the natural parent, at subsequent hearings concerning that child, is entitled to prior and specific notice of the disposition sought by the agency in whose custody a child has been placed. Due process demands it.

■ A petition for termination of parental rights pursuant to Code § 16.1-283 does not encompass a petition for *permanent* foster care. The latter is not a less drastic form of the former, but rather is a different and distinct alternative. As such, a natural parent in preparing for a hearing on one would not necessarily adequately prepare for the other.

Code § 63.1-206.1 provides the statutory scheme for *permanent* foster care placement. That scheme is intended to provide a more permanent placement for a child in a particular foster home than is generally obtained in regular foster care, and yet does not, as in the case of adoption proceedings, serve as a vehicle for terminating parental rights. Where the child has a continuing involvement with his or her natural parents, the statute provides for a continuation of that involvement through court-ordered visiting arrangements with the natural parents. Legal custody remains with the local department of welfare or social services or a licensed child-placing agency, and physical custody is granted to the foster parent. In this capacity, the foster parent is granted the authority to give parental consent in such matters as surgery, entrance into the armed services, marriage and others. The intended result is stability for the child and the foster parents know the nature and scope of their authority and responsibility. No change can occur in this placement without an order of the court which instituted the placement. A proper petition, filed by the foster parents, local department, licensed child-placing agency or "other appropriate party," is required for such a change. We construe the term "other appropriate party" to include the natural parent. Consequently, the issue of *permanently* depriving Mrs. Martin of the custody of John is not involved in this appeal. However, she has lost substantial parental rights vis-a-vis regular foster care. Where, as here, the natural parent is not given specific notice by a petition seeking a specific placement, and where, as here, substantial parental rights are at stake, we hold that a trial court has no jurisdiction to enter *sua sponte* an order terminating or reducing those parental rights. Our review of the record reveals that the trial judge was very conscientious in finding a placement for the child which would be in his best interests, and we make no determination in this opinion that the placement ordered was inappropriate. Rather, our holding addresses the omission of the necessary procedure to arrive at that placement.

Accordingly, the order of June 23, 1985, insofar as it places the child in *permanent* foster care, is vacated, and this case is remanded for further proceedings consistent with this opinion. The effect of our decision is to affirm the denial of Mrs. Martin's custody petition, and to leave the prior orders placing the child in regular foster care in full force and effect.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

Coleman, J., and Moon, J., concurred.