COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Benton and Clements
Argued at Chesapeake, Virginia


JESSIE LEE WALKER, JR.

MEMORANDUM OPINION* BY
v.    Record No. 0505-00-1          JUDGE JEAN HARRISON CLEMENTS
                                      DECEMBER 19, 2000
VIRGINIA BEACH DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Thomas S. Shadrick, Judge

Arthur C. Ermlich, Jr. (Berry, Ermlich,
Lomax & Meixel, on brief), for appellant.

Karla Carter Haynes, Assistant City Attorney
(Leslie L. Lilley, City Attorney, on brief),
for appellee.


Jessie Lee Walker, Jr., appeals from a decision terminating

his residual parental rights to his child on petition by the

Virginia Beach Department of Social Services. He contends the

trial court erred in finding the evidence sufficient to terminate

his parental rights. We do not agree and affirm the trial court's

decision.

As the parties are fully conversant with the record in this

case and because this memorandum opinion carries no precedential

value, this opinion recites only those facts necessary to a

disposition of this appeal.

---

    * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

The trial court terminated Walker's residual parental rights to his child, Jessie Lee Walker, III, pursuant to subsections (B) and (C)(2) of Code § 16.1-283.[1]  Walker argues that termination of his residual parental rights was improper because the Department of Social Services failed to prove that the requirements of those subsections were met.  Specifically, he claims that the Department failed to prove by clear and convincing evidence that he was unwilling or unable to remedy within a reasonable time the situation that led to his child being put into foster care.  He asserts that, unlike the child's mother, "he was not given any services, and there were no efforts [by the Department] to enable him to properly care for his child" and that, unlike the child's mother, he "complied with every request made by the Department of Social Services."

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).  "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990).  On appeal, we presume that the trial court

---

[1] The natural mother's residual parental rights also were terminated, but she is not a party to this appeal.

-

"thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests."  Id. at 329, 387 S.E.2d at 796.  Furthermore, "[w]here, as here, the trial court heard the evidence ore tenus, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania County Dep't of Social Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986).

Code § 16.1-283 establishes the procedures and grounds under which a court may order the termination of residual parental rights.  Under Code § 16.1-283(B), the residual rights of a parent of a child placed in foster care because of parental neglect or abuse may be terminated only if the court finds by clear and convincing evidence that (1) termination is in the best interests of the child; (2) the neglect or abuse suffered by the child presented a serious and substantial threat to the child's life, health, or development; and (3) it is not reasonably likely that the conditions which resulted in the neglect or abuse can be substantially corrected or eliminated to allow the child's safe return to his parent within a reasonable period of time.

Under Code § 16.1-283(C)(2), the residual parental rights of a parent of a child placed in foster care may be terminated only if the court finds by clear and convincing evidence that (1) termination is in the best interests of the child; (2) the parent, without good cause, has been unwilling or unable within a

-

reasonable period not exceeding twelve months to substantially remedy the conditions that led to or required the continuation of the child's foster care placement; and (3) the parent failed to remedy the conditions notwithstanding the reasonable and appropriate efforts of rehabilitative agencies.

On appeal, we view the evidence in the light most favorable to the prevailing party below, the Department of Social Services, and grant to that evidence all reasonable inferences fairly deducible therefrom.  Logan, 13 Va. App. at 128, 409 S.E.2d at 463.  So viewed, the evidence established that Jessie, the child in question, was born on May 11, 1998.  Prior to his emergency removal in February 1999, the police responded to the home of Jessie's parents at least thirty times for domestic violence, although apparently none of those incidents involved the child. Between August 1998 and February 1999, the Department of Social Services contacted Jessie's family at least five times because of concerns about domestic violence, substance abuse, and the care and supervision of the child.

On the last such occasion, on February 2, 1999, Walker had called 911 because the baby was crying and then inexplicably left the child with rescue squad personnel "to go to the store."  When he did not return and could not be found, Jessie was taken into protective custody by the Department of Social Services.  The juvenile and domestic relations district court found that Walker had neglected the child by abandonment.

-

The day after Jessie's placement in foster care, a child protective services investigator went to Walker's house, but Walker refused to give her the medicine that Jessie had been taking or to discuss Jessie's removal with her. Shortly thereafter Walker checked himself into the Veterans Administration Hospital.

A military veteran suffering from post-traumatic stress disorder and "polysubstance dependence," Walker stated upon his admission to the hospital that he was unable to correctly take his medications because there were too many. He further reported suffering from insomnia and depression and having "flashbacks which last all day and include auditory and visual hallucinations of, among other things, a man in black pajamas whom he wishes to kill and people speaking Vietnamese."

Walker was in and out of the hospital for much of the year following Jessie's emergency removal and placement in foster care. In fact, he was discharged from the hospital after a stay of nearly three months only a week before trial in February 2000. He admitted at trial that he had had problems with his medications during the previous year but stated that they had been readjusted and were no longer a problem. He offered no evidence, however, to document or otherwise support that assertion. He testified he was currently taking six or seven different medications, two or three of which he could not name and did not know what they were. He

-

also admitted he drank alcohol but denied he had "an illegal drug problem."

As part of its service plan, the Department of Social Services gave Walker referral sources for substance abuse treatment, anger management, and parenting skills. The Department also tried to arrange for visitation for Walker but was precluded from doing so when the juvenile court disallowed such visitation because of threats he had made. The court also ordered, again because of Walker's threats, that he have no contact with the social worker assigned to the case. The Department of Social Services, therefore, was limited to contacting him and coordinating services with him by telephone.

Walker testified at trial that he had taken anger management classes and a parenting class and had participated in a substance abuse evaluation while in the Veterans Administration Hospital, in accordance with the foster care service plan. However, he produced no documentation or other evidence to show that he had participated in, much less successfully completed, any such treatment programs. Nor did the hospital records obtained by the Department of Social Services verify his successful completion of any such programs. Furthermore, while Walker did eventually, when ordered to by the court, allow the Department of Social Services access to his hospital records, he refused to execute a release allowing the social worker to speak with hospital personnel about

-

the treatment he had received or the programs he had attended in the hospital.

Walker testified at trial that he was capable of taking care of his child. When asked by the trial judge how he could care for the child, he replied, "I can hire somebody to take care of him." Walker testified his annual income was $4,600, and, according to his hospital records, he lacked the ability to manage his financial affairs. Moreover, Walker admitted to his social worker that he was unable to take care of Jessie.

In its order, the trial court found that Jessie was "in foster care as a result of court commitment based on neglect by abandonment." The trial court further found by clear and convincing evidence that termination was in the child's best interests, that the neglect suffered by the child

> presented a serious and substantial threat to the life, health or development of the [c]hild, . . . that it was unlikely that the conditions which resulted in the neglect can be substantially corrected or eliminated so as to allow the [c]hild's safe return to [Walker] within a reasonable period of time and . . . that [Walker], without good cause, [has] been unable or unwilling within a reasonable period not exceeding twelve months from the date the [c]hild was placed in foster care to remedy substantially the conditions which led to the [c]hild's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end . . . .

We find that the evidence in this case supports the court's findings. It is apparent from the record that Walker is unable to

-

care for a young child and was unable or unwilling to remedy within a reasonable time the conditions that led to his child's placement in foster care, notwithstanding the Department of Social Services' efforts to that end.  Thus, we cannot say that the trial court's finding by clear and convincing evidence that the conditions of subsections (B) and (C)(2) of Code § 16.1-283 have been established was plainly wrong or without evidence to support it.  Accordingly, we affirm the trial court's decision.

<u>Affirmed.</u>