COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Chafin and Senior Judge Annunziata

JENNIFER DAWN CARWILE

v.      Record No. 1310-14-3

DEPARTMENT OF SOCIAL SERVICES
 FOR CAMPBELL COUNTY                              MEMORANDUM OPINION*
                                                     PER CURIAM
ERIC EUGENE BLACK                                  JANUARY 13, 2015

v.      Record No. 1325-14-3

DEPARTMENT OF SOCIAL SERVICES
 FOR CAMPBELL COUNTY


            FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
                         John T. Cook, Judge

       (M. Kevin Bailey, on brief), for appellant Jennifer Dawn Carwile.

       (Robert R. Feagans, Jr., on brief), for appellant Eric Eugene Black.

       (David W. Shreve, County Attorney; Michael C. Keenan,
       Guardian *ad litem* for minor child, on briefs), for appellee.


       Jennifer Dawn Carwile (mother) and Eric Eugene Black (father) appeal orders terminating

their parental rights to their child and approving a foster care plan with the goal of adoption

submitted by the Department of Social Services for Campbell County (the Department).  Mother

argues that the trial court erred by finding that the evidence was sufficient to terminate her parental

rights pursuant to (1) Code § 16.1-283(B)(1) because the evidence was "not clear and convincing

that the child suffered any trauma due to [mother's] neglect or abuse, nor was the evidence clear and

convincing that the frequency and severity of [father's] alleged domestic abuse of [mother]

_____
       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

presented a serious and substantial threat to the child's life, health, or development" and (2) Code § 16.1-283(B)(2) because the evidence was "not clear and convincing that the conditions which resulted in the child's neglect or abuse could not be substantially corrected or eliminated so as to allow the child's safe return to [mother] within a reasonable time" and that mother did have the "mental and emotional ability to parent the child and completed all rehabilitative measures required by [the Department]." Father argues that the trial court erred by (1) terminating his parental rights because there was insufficient evidence to prove that "he was responsible for the conditions leading to his child being placed in foster care and he had substantially complied with the remedial services given to him by [the Department]" and (2) approving a foster care plan with a goal of adoption because the Department did not prove that father "failed to complete the remedial services recommended" by the Department.[1] Upon reviewing the record and briefs of the parties, we conclude that these appeals are without merit. Accordingly, we summarily affirm the decisions of the circuit court. See Rule 5A:27.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

Mother and father have one child, who was born in May 2011. In August 2012, mother filed a petition for a protective order against father because there had been incidents of domestic violence between them and in front of the child. Mother stated in her affidavit, "I feel threatened

---

[1] Considering this Court's ruling to summarily affirm the circuit court's orders, we need not consider father's second assignment of error as it relates to the approval of the foster care plan's goal of adoption. See Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 265 n.3, 616 S.E.2d 765, 769 n.3 (2005) ("Our decision to affirm the termination order necessarily subsumes this aspect of his appeal [a challenge to the foster care plan's goal of adoption] because a preponderance-of-the-evidence standard governs judicial modifications of foster care plans." (citations omitted)).

for myself and my daughter because I never know what to expect from him." The Department investigated the situation and established a safety plan with mother.

In October 2012, the Department received another complaint. Mother stated that father hit her and yelled at her while the child was present. He threatened to burn down their residence and kill her and her family members. Mother expressed concern for her daughter's safety and well-being if she were left alone with father. The Department spoke with mother about her ability to adequately supervise the child during a domestic violence incident. The Department created a second safety plan with mother.

The Department also sought a protective order on behalf of the child. The Campbell County Juvenile and Domestic Relations District Court (the JDR court) entered a preliminary protective order on November 8, 2012 and prohibited father from having any contact with the child, "pending further hearing." On November 15, 2012, an adjudicatory hearing was held, and the JDR court placed the child in the Department's custody. Mother and father fled and took the child to father's brother's house in Maryland. They were charged with and convicted of abduction.

Mother did not understand why the Department took custody of the child. She told the social worker that she "lied about everything she had put into the [affidavits for] the protective orders," so that father would receive mental health treatment. Mother argued that the child was safe and adequately supervised.

The Department recommended that mother and father participate in domestic violence classes, psychological testing, parenting classes, and medication management services. Father could not complete the domestic violence classes because he was banned from the domestic violence center as a habitual abuser. Both parents completed the parenting classes and psychological evaluations.

Dr. Andrew James Anderson conducted the psychological evaluation for mother. Dr. Anderson testified that mother had an IQ of 75. He stated that her "low level of intellectual functioning" causes her to be "inflexible, inadaptable, and unable to think on her feet." He diagnosed her with a "cognitive disorder secondary to traumatic brain injury, mood disorder associated either with the cognitive impairment or perhaps existing independently or as a result of a . . . pre-existing substance abuse disorder."[2] He was concerned about her ability to parent the child if she were living with father because it "would be an unworkable situation where the child would be at risk."

Dr. Anderson also conducted the psychological evaluation for father. He testified that father had an IQ of 63. He diagnosed father with "paranoid schizophrenia or schizoaffective disorder currently in partial remission under treatment." Dr. Anderson further stated that father had "demonstrated alcohol and marijuana abuse in early remission. Mild mental deficiency and anti-social personality traits." He opined that father was not "capable of providing safe and effective parenting to a child of any age, including a three year old." Dr. Anderson was especially concerned about father's irrational thinking, "very poor emotional control, [and] very low stress tolerance."

Dr. Deborah Maxey evaluated the child and diagnosed her with dissociation. Dr. Maxey suggested that the parents not visit with the child while the criminal charges of abduction were pending. On May 30, 2013, mother and father were sentenced to five-year suspended sentences.

Dr. Maxey and the foster care worker developed a plan with the parents for their first visitation with child, which occurred on June 7, 2013. On the day of the visit, the child screamed uncontrollably when shown a picture of her parents. When the child was brought into the

---

[2] Dr. Anderson stated that mother was in "sustained remission" for the substance abuse problems.

- 4 -

visitation center, she was upset and clung to the social worker.  Father became angry and frustrated, and his behavior deteriorated to the point that he had to be removed from the room twice.  Mother continued with the visit, but also became upset at times.

After the visit, the Department told mother that the goal was going to be return home to mother alone and the Department intended to terminate father's parental rights.  Visitations were arranged between the child and mother.  As a condition of the visitations continuing, mother had to separate from father, which she did.

In September 2013, Dr. Maxey told mother that the child was still suffering from trauma and recommended that all visitations cease.  Mother agreed "to do what the professional had told her to do, but did not like the idea."  After that meeting, the mother and father reunited and cohabited again, and mother became pregnant.[3]

On October 28, 2013, the Department filed petitions for termination of mother's and father's parental rights.  On January 16, 2014, the JDR court entered orders terminating both parents' parental rights and approving the goal of adoption.  Mother and father appealed to the circuit court.

On April 2 and May 6, 2014, the circuit court heard evidence and argument.  At the conclusion of the trial, the circuit court found that the Department proved by clear and convincing evidence that it was in the best interests of the child to terminate mother's and father's parental rights pursuant to Code § 16.1-283(B) and approved the goal of adoption.  On June 24, 2014, the circuit court entered orders reflecting its rulings.  These appeals followed.

---

[3] At the time of the circuit court hearing, that child was two months old and living with mother and father.

ANALYSIS

Both parents argue that the trial court erred in terminating their parental rights pursuant to Code § 16.1-283(B).

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and

> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

Both parents challenge the circuit court's holding that the child was abused or neglected. Mother argues that if there was any abuse or neglect, it was abuse or neglect inflicted upon her, not the child, by father. Mother asserts there was no evidence that she abused or neglected the child. Likewise, father argues that there was no evidence of any physical abuse against the child. Father notes that mother claimed she was abused in order for father to get mental health services.

The circuit court disagreed with the parents and found that the child was abused or neglected. The circuit court stated that it found Dr. Maxey's testimony to be "convincing and

persuasive" that the child was "severely traumatized." The circuit court found that Dr. Maxey's opinion was corroborated by mother's affidavit for the protective order and the child's reactions to the parents during visitations. Dr. Maxey testified how the child dissociated during the visits with her parents. Dr. Maxey explained that disassociation is a trauma response, and the "brain kind of goes into overdrive and it shuts down the muscles." Disassociation is concerning for an infant or young child because it "prunes" the brain and causes cell death. The parents' actions threatened the child's health and well-being. See Code § 16.1-228 (definition of abused and neglected).

Both parents also argued that they complied with the Department's requirements and remedied the situation that led to the child being placed in foster care. They attended the parenting classes and participated in the psychological evaluations. Mother argues that she separated from father at the Department's request, so that she could continue to visit with the child and work toward reunification.

Despite these arguments, the circuit court found that they did not substantially remedy the situation. There was evidence that when the child entered foster care, she had developmental delays. She had no schedule for sleeping and napping. After being in foster care, the child's sleep improved, but once she visited with her parents again in June 2013, the child woke up in the middle of the night screaming. The child's behavior deteriorated while she visited with mother. Once all visitations stopped, the child became happy and well-adjusted.

The circuit court relied on Dr. Anderson's testimony and opinion that "both of these parents have issues of mental or emotional issues or deficiencies of such a severity that there is no reasonable expectation that such parents will be able to undertake the responsibility for the care needed by the child in accordance with his [sic] age and stage of development." Dr. Anderson did not believe that father was capable of safely parenting a child. Due to the

father's limitations, Dr. Anderson did not feel that any amount of rehabilitation would enable father to parent the child. Dr. Anderson also was concerned about mother's ability to parent the child. She had "unusually strong dependency needs" and "feeling[s] of insecurity and inadequacy." Dr. Anderson noted that mother had the inability to "self protect" and "someone who has trouble protecting themselves [sic] is very likely to have difficulty protecting anyone who depends on them for safety such as a child." In fact, mother's dependency needs and lack of insight manifested when she resumed cohabiting with father in October 2013 and had another baby with him.

The circuit court also considered Dr. Maxey's opinion that neither parent was capable of assessing and meeting the child's needs.

"[S]ubsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 270-71, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

The evidence supported the trial court's rulings that the parents did not substantially remedy the underlying problems.

Mother further argues that the Department had to prove one of the three factors in order to establish prima facie evidence that she could not remedy the situation that led to foster care. She states that the trial court erred in concluding that her mental health problems established prima facie evidence of Code § 16.1-283(B)(2). She contends there was evidence that she would be capable of parenting the child in a proper environment.

> Proof of any of the following shall constitute prima facie evidence
> of the conditions set forth in subdivision B 2:

- 8 -

a. The parent or parents have a mental or emotional illness or intellectual disability of such severity that there is no reasonable expectation that such parent will be able to undertake responsibility for the care needed by the child in accordance with his age and stage of development;

b. The parent or parents have habitually abused or are addicted to intoxicating liquors, narcotics or other dangerous drugs to the extent that proper parental ability has been seriously impaired and the parent, without good cause, has not responded to or followed through with recommended and available treatment which could have improved the capacity for adequate parental functioning; or

c. The parent or parents, without good cause, have not responded to or followed through with appropriate, available and reasonable rehabilitative efforts on the part of social, medical, mental health or other rehabilitative agencies designed to reduce, eliminate or prevent the neglect or abuse of the child.

Code § 16.1-283(B)(2).

"The prima facie examples listed in Code § 16.1-283(B)(2)(a) to (B)(2)(c) do not purport to be the only conceivable methods of proof. The list is illustrative, not exhaustive." Toms, 46 Va. App. at 270, 616 S.E.2d at 771.

The circuit court found that mother's mental health problems were one factor; however, as stated above, it was not the only factor that led to the termination of her parental rights.

Considering the totality of the evidence, the circuit court did not err in terminating the parental rights of mother and father.

CONCLUSION

For the foregoing reasons, the circuit court's rulings are summarily affirmed. Rule 5A:27.

Affirmed.

- 9 -