COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Chief Judge Huff, Judge O'Brien and Senior Judge Haley
Argued at Norfolk, Virginia


SHAUNTAE D. McKIVER

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0801-15-1              JUDGE MARY GRACE O'BRIEN
                                                    DECEMBER 22, 2015

PORTSMOUTH DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Kenneth R. Melvin, Judge

Dianne G. Ringer (Bierowicz & Ringer, P.C., on brief), for
appellant.

Burle U. Stromberg; Cynthia L. Chaing, Guardian *ad litem* for the
infant children (Cheran Cordell; Portsmouth City Attorney's Office,
on brief), for appellee.


Shauntae D. McKiver ("appellant") appeals from a final order terminating her residual

parental rights to her two children and approving foster care plans with the goal of adoption for

both children. Appellant assigns the following errors to the court's decision:

> 1. The trial court erred in finding the evidence sufficient to
>    terminate McKiver's residual parental rights and, in
>    conjunction with that, to approve the goal of adoption, under
>    section 16.1-283(B) of the Code of Virginia. The evidence
>    failed to prove that the neglect or abuse suffered by the
>    children "presents a serious and substantial threat" to their life,
>    health or development and failed to prove that it is not
>    reasonably likely that the conditions which resulted in the
>    neglect or abuse, even if such existed, can be substantially
>    corrected or eliminated within a reasonable period of time.
>
> 2. The trial court erred in finding the evidence sufficient to
>    terminate McKiver's residual parental rights and, in

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

conjunction with that, to approve the goal of adoption, under section 16.1-283(C) of the Code of Virginia. The evidence failed to prove that McKiver was unwilling or unable to substantially remedy the conditions which led to the children's being placed into foster care and that she lacked good cause for same.

Finding no error, we affirm the ruling of the trial court.

## I. BACKGROUND

On June 27, 2013, the Portsmouth Department of Social Services ("DSS") received a referral alleging physical neglect of appellant's two children, K.M. and H.M., who were three and one year old, respectively. The referral arose because appellant attempted suicide by taking an overdose of pills in the presence of the children while they were residing at a homeless shelter in Norfolk. Appellant was taken to a hospital for treatment, and she and the children were evicted from the shelter. The identity of the children's fathers was unknown. Attempts to place the children with a relative were unsuccessful. Following a brief placement with a friend, the children came into DSS custody on July 12, 2013. The goal at that time was for the children to return home to their mother.

Almost a year before the children were removed from their mother, on July 24, 2012, DSS opened an "Ongoing Service" file for appellant because of a complaint that she was using alcohol and marijuana in the house when her children were present. DSS provided services at that time, and referred appellant to Narcotics Anonymous.

After the children were taken into DSS custody in 2013, appellant received additional services. She continued to participate in a "Parents as Teachers" parenting program, which she began on May 28, 2013. The program provided parenting education, information about community resources, and some personal home visits. At trial, a supervisor from the program testified that appellant completed sixteen of approximately thirty-five scheduled visits. Appellant was also provided with a case manager, who assisted her in setting up specific goals,

- 2 -

such as housing and employment. That relationship ended in July of 2014, and the parent education services were terminated in October of 2014, when appellant indicated that she no longer wanted the services. She did not meet the housing and employment goals.

On July 2, 2013, the Virginia Independent Clinical Assessment Program assessed appellant and found that she was eligible for mental health support services. As a result, she underwent a psychological and parenting evaluation in September and October of 2013. The clinical psychologist who conducted the evaluation found that appellant was "very depressed, confused and emotional." According to the evaluation, appellant's "loneliness and depression" made her at "high risk for child abuse and neglect." The evaluation concluded that appellant "reported a high level of stress related to parenting. She perceives herself to be weak, sick, socially isolated and physically incapable of parenting her children." Further, appellant was "at risk for further neglect or maltreatment of her children." The psychologist opined that appellant was "unable to adequately care for her own basic needs, let alone the needs of her two children."

As a result of the assessment, appellant was referred for psychotherapy, counseling, and a parenting class. The foster care service plans required that in addition to the mental health treatment, appellant would maintain employment, obtain "safe and consistent" housing, cooperate with the service professionals at DSS, and continue supervised visitation with her children.

Although appellant attended the ten psychotherapy sessions set up for her, when told she needed further psychiatric evaluation, she contended that she did not need it. She took medication for a period of time but discontinued it. She initially stopped because she could not afford it, but later, when it was provided for her, she did not pick up the medication.

When DSS first took custody of the children in 2013, appellant consistently visited them on a weekly basis. Toward the end of 2014, that changed. At the same time, appellant declined

to participate in a dual diagnosis support group, declined case management services to assist her in applying for social security income and finding a stable residence, and declined therapy. Appellant's visitation with her children became more sporadic. In mid-October of 2014, appellant told her case manager that she no longer wanted to work toward reunification with her children. She directed the manager not to call her anymore and not to give her phone number to any providers. She did, however, continue to visit with the children.

In December of 2014, DSS changed the goal from "return home" to "adoption." On December 29, 2014, DSS filed petitions in the Portsmouth Juvenile and Domestic Relations District Court ("JDR court"), requesting that permanency planning hearings be conducted. The following day, DSS filed additional petitions requesting that appellant's parental rights with respect to K.M. and H.M. be terminated. On February 2, 2015, the JDR court held a hearing on the petitions and entered orders terminating appellant's parental rights and accepting the foster care plans with a changed goal of "adoption" for each child. Appellant attempted to arrange for visitation with the children following the entry of this order, but was unsuccessful because the goal had changed to adoption. Appellant appealed the orders of the JDR court to the circuit court.

The matter was heard in circuit court on April 15, 2015. At that time, K.M. was five years old and H.M. was three years old. The children had been in foster care for twenty-one months. Testimony was adduced establishing that K.M. had been diagnosed with ADHD and Oppositional Defiant Behavior. At the time of trial, appellant was living in an apartment with two other roommates, but her name was not on the lease. She was on a waiting list for low-income housing in Chesapeake, Virginia, and hoped to move there in four to eight months. She had held five jobs from the time the children were taken into custody, and at the time of trial was working twenty to twenty-four hours a week as a cook, being paid nine dollars an hour.

Appellant testified that she was expecting another child in September, and was not residing with the child's father because they would become involved in altercations that occasionally required police intervention. She also acknowledged failing to cooperate with some of the reunification services offered by DSS.

At the conclusion of the hearing, the court entered an order terminating appellant's parental rights to the children and accepting the foster care plans with the goal of adoption. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

"In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)). "When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Id. The circuit court's judgment will not be disturbed on appeal unless plainly wrong or without evidence to support it. Id.

Judicial review of foster care plan recommendations is governed by a preponderance of the evidence standard. Najera v. Chesapeake Div. of Soc. Servs., 48 Va. App. 237, 240, 629 S.E.2d 721, 722 (2006). However, Code § 16.1-283(B) and (C) require that the requisites for termination of parental rights be proved by clear and convincing evidence. Clear and convincing evidence is "more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Edwards v. Cty. of Arlington, 5 Va. App. 294, 306-07, 361 S.E.2d 644, 650

(1987) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 21, 348 S.E.2d 13, 16 (1986)).

Therefore, we review the trial court's decision in applying the different standards to determine whether DSS met its burden of proof to establish both the approval of the foster care plans and the termination of appellant's residual parental rights.

### B.  Assignment of Error 1:  Code § 16.1-283(B)

Appellant contends that the trial court erred in terminating her parental rights to her children under Code § 16.1-283(B) because "[t]he evidence failed to prove that the neglect or abuse suffered by the children 'presents a serious and substantial threat' to their life, health or development."  She also argues that DSS "failed to prove that it is not reasonably likely that the conditions which resulted in the neglect or abuse, even if such existed, can be substantially corrected or eliminated within a reasonable period of time."  For the following reasons, we disagree and affirm the ruling of the trial court.[1]

Code § 16.1-283(B) provides, in pertinent part,

> The residual parental rights of a parent . . . of a child found by the court to be neglected or abused and placed in foster care as a result of [] court commitment . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:
>
> 1.  The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2.  It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent . . . within a reasonable period of time.

---

[1] Because we affirm the trial court's decision as it relates to appellant's first assignment of error, we need not address appellant's second assignment of error.  Indeed, appellant's counsel conceded at oral argument before this Court that if this Court affirms the trial court's decision with respect to Code § 16.1-283(B), then it need not address any argument with respect to Code § 16.1-283(C).  Oral Argument Audio at 01:52-02:03 ("[T]he Court may very well say, well we affirm under (B), therefore we're not going to address (C).").

The evidence presented at trial supports the court's conclusion that appellant neglected her children to a degree that substantially threatened their "[lives], health or development."  After being involved in a DSS service plan because of alcohol and marijuana use while she was the sole custodial parent of a one and three year old, appellant attempted suicide in their presence.  As a result, she and her children were evicted from the homeless shelter where they were staying.  In addition to her drug use, appellant had been unable to maintain consistent employment and provide a stable residence for herself and K.M. and H.M.  Finally, appellant struggled with her own serious mental health issues, and was unable to properly care for K.M., who was diagnosed with ADHD and Oppositional Defiant Behavior.

The record also did not support appellant's contention that the conditions that resulted in the children's removal could be "substantially corrected or eliminated" within a "reasonable period of time."  In fact, the converse was established.  Code § 16.1-283(B)(2) lists factors that may be considered prima facie evidence that the conditions are unlikely to be remedied, including a parent's inability or unwillingness to follow through with recommended and available treatment for narcotics addiction or for mental health services.  In the present case, the record is replete with evidence that appellant did not follow through with appropriate rehabilitative efforts offered by DSS.

Even before the children's removal, on July 24, 2012, DSS implemented on-going services for appellant to address her drug use.  However, appellant tested positive for marijuana as late as September of 2014.  Her psychological difficulties were also significant.  As a clinical psychologist noted, her "level of stress is severe, and her untreated depression and post-traumatic stress puts her at a high risk for a second suicidal attempt or additional self-destructive behavior."

Appellant, who was completely without family support, had discontinued therapy and medication by the fall of 2014. Notably, she told her case manager that she no longer wanted to work toward reunification with her children, and she directed the case manager not to give her phone number to any service providers. "The law does not require the division to force its services upon an unwilling or disinterested parent." Barkey v. Commonwealth, 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986).

Although appellant testified that she desired to be reunified with her children, "past actions . . . serve as good indicators of what the future may be expected to hold." Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)). By the time of the circuit court trial, K.M. and H.M. had been in foster care for twenty-one months, over half of H.M.'s life and nearly a third of K.M.'s life. Appellant was still not established in stable housing and had recently become employed on a part-time basis. She was working at her fifth job since the children had been taken into DSS custody. She was expecting another child and had failed to follow through with the rehabilitative efforts of several agencies.

Considering all of the facts, it was not error for the court to conclude that not only were the children subjected to neglect which constituted a "serious and substantial threat" to their lives, but it was "not reasonably likely that the conditions could be substantially corrected or eliminated within a reasonable amount of time." Therefore, the court properly concluded that it was in the children's best interest that appellant's parental rights be terminated and the foster care plans with a goal of adoption be accepted.

### III. CONCLUSION

For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.