UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, O'Brien and Senior Judge Bumgardner

TIFFANY CUSTIS

v.       Record No. 0229-17-3

HARRISONBURG-ROCKINGHAM
 SOCIAL SERVICES DISTRICT

MEMORANDUM OPINION*
PER CURIAM
AUGUST 8, 2017

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Clark A. Ritchie, Judge

(Lynn C. Svonavec, on brief), for appellant. Appellant submitting
on brief.

(Kim Van Horn Gutterman, Assistant County Attorney; Kimberle
Harding, Guardian *ad litem* for the minor child, on brief), for
appellee. Appellee and Guardian *ad litem* submitting on brief.


Tiffany Custis (mother) appeals the orders terminating her parental rights to her child, L.C.,

and approving the goal of adoption. Mother argues that the circuit court erred in finding that the

Harrisonburg-Rockingham Social Services District (the Department) presented clear and convincing

evidence that terminating her parental rights to L.C. pursuant to Code § 16.1-283(C) was in the

child's best interests. Upon reviewing the record and briefs of the parties, we conclude that the

circuit court did not err. Accordingly, we affirm the decision of the circuit court.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Mother had a traumatic childhood and began using drugs at age eleven. She has a history of substance abuse and crime. When mother was sixteen years old, she gave birth to her oldest child, J.[1] In January 2011, mother gave birth to T.C., and in May 2015, she gave birth to L.C.[2] In October 2015, the Department received a child protective services complaint that T.C. and L.C. were being neglected. On October 27, 2015, the Department and a local drug task force visited the residence. The Department found that the apartment was "very dirty" with trash everywhere. There was a glass meth pipe on the bathroom counter, and a marijuana grinder was found in mother's purse. Maggots were in the corner of the living room. One room was closed off because of mold and mildew. There was an inadequate amount of edible food in the residence. L.C. was unclothed and without a diaper because mother did not have any diapers. Mother admitted using marijuana, and she said that she used crack cocaine and methamphetamines the prior weekend, while the children were in her care.

On October 28, 2015, the Department removed both children and placed them in the same foster home. T.C. was protective of L.C. and wanted to feed her and change her. L.C. was developmentally delayed and, while in foster care, started speech therapy to help her with feeding issues. She also had substantial weakness on the left side of her body, which required additional therapy. T.C. had aggressive outbursts and became violent toward the foster parents and L.C. Due to this behavior, T.C. was removed and placed in a therapeutic foster home.

Since entering foster care, L.C. is no longer delayed, except for some swallowing and chewing issues. T.C. is doing better in her therapeutic foster placement, although she still has behavioral issues.

---

[1] The maternal grandmother has raised J. since he was born.

[2] T.C. and L.C. do not have the same biological father. L.C.'s father is unknown.

After the Department removed the children, it provided mother with numerous services. The Department offered weekly visitation with the children. Mother visited consistently with the children at first, but the visitations became irregular and stopped when mother used drugs and was later incarcerated. Mother's last visit with L.C. was February 3, 2016.

The Department referred mother to the Community Services Board so she could obtain substance abuse treatment and counseling and attend parenting classes. Mother did not follow up with the substance abuse treatment and was discharged in December 2015. Mother did not appear for three appointments with Dr. JoAnne Grayson, who was conducting a parental capacity and psychological evaluation, so the evaluation was never completed. Mother did not complete the parenting classes because she was arrested in January 2016 for felony credit card fraud. After she was released on bond on January 27, 2016, mother tested positive for marijuana and told the Department that she was moving to Charlottesville. The Department referred her to the Charlottesville Community Services Board, where she went once and later was discharged due to lack of attendance. On February 17, 2016, mother was arrested for larceny and was incarcerated until March 23, 2016. In early April 2016, mother admitted that she had not completed any services and doubted her ability "to get it together for the girls." On May 12, 2016, mother was arrested for possession of cocaine, and she remained incarcerated until September 2, 2016. After she was released, the Department asked her to submit to random drug screens, but she refused.

The Department investigated possible relative placements for L.C. At first, the maternal grandmother expressed an interest in having custody of the girls. However, in April 2016, the maternal grandmother indicated that she would not move forward with the home study, and in June 2016, she confirmed that she did not want to be considered a caregiver for the children due

- 3 -

to her busy work schedule and the fact that she was raising one of mother's other children. The Department investigated other relatives as possible caregivers for L.C., but to no avail.[3]

On September 8, 2016, the Department filed a petition to terminate mother's parental rights to L.C. On November 9, 2016, the Rockingham County Juvenile and Domestic Relations District Court (the JDR court) entered orders terminating mother's parental rights to L.C. and approving the goal of adoption. Mother appealed to the circuit court.

On January 26, 2017, the parties presented their evidence and argument to the circuit court. On February 1, 2017, the circuit court issued its letter opinion. The circuit court found that mother had not remedied her issues with substance abuse, and she did not complete any of the Department's requirements, including substance abuse treatment and counseling, psychiatric evaluation, parenting classes, and individual counseling. Furthermore, mother had not maintained employment or stable housing while the child was in foster care. The circuit court concluded that it was in L.C.'s best interests to terminate mother's parental rights. At trial, the maternal grandmother and a maternal aunt testified that each of them would be willing to be a placement for L.C., but neither one had met L.C. nor filed a petition for custody. The circuit court did not find them to be suitable due to the necessity for finality and stability for L.C. Consequently, the circuit court entered orders terminating mother's parental rights to L.C. pursuant to Code § 16.1-283(C)(2) and approving the goal of adoption. This appeal followed.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986)

---

[3] The Department was investigating a paternal uncle as a possible placement for T.C., but he is not related to L.C.

(citation omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Mother argues that the trial court erred by finding that the Department presented clear and convincing evidence that termination of mother's parental rights was in L.C.'s best interests. Mother contends she was making "notable progress" toward remedying the problems that led to the removal of the children. She notes that her criminal matters have been resolved, and she attended some of the visits with her children. She further states that she completed some of the parenting classes. Mother emphasizes that termination of her parental rights would not be in L.C.'s best interests because she would be separated from her sister, T.C.

As noted above, the circuit court terminated mother's parental rights pursuant to Code § 16.1-283(C)(2), which states that a court may terminate parental rights if

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Mother admittedly did not complete any of the required services and has not remedied any of the conditions that led to L.C.'s placement in foster care. Mother continues to have substance abuse problems and did not seek substance abuse treatment. She did not obtain individual counseling and did not complete the parenting classes. Mother does not have stable employment or housing. The circuit court stated in its letter opinion that "[a]lmost from the beginning, Custis was unwilling to focus on the issues that needed to be remedied within the statutory time period so her child could be returned and her rights retained."

At the time of the circuit court hearing, L.C. had been in foster care for approximately fifteen months, and mother had not seen L.C. in almost one year. The circuit court concluded that L.C. "has no meaningful attachment to her [mother] at this point." The circuit court held that L.C. needed "finality and stability," and waiting for the maternal grandmother and/or aunt to complete the necessary steps for placement, including ICPC investigations, would not be in the child's best interests. Meanwhile, the evidence proved that L.C. was in a loving home and they want to adopt her. L.C. had improved greatly in foster care and was no longer delayed, except for some swallowing and chewing issues. The foster mother testified that she and her husband were committed to maintaining L.C. and T.C.'s relationship, even if it meant travelling to Georgia to visit T.C. at her paternal uncle's house.

Based on the totality of the circumstances, the evidence was sufficient to terminate mother's parental rights pursuant to Code § 16.1-283(C)(2). The circuit court did not err in finding that the termination of mother's parental rights was in the child's best interests.

CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

Affirmed.