UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present: Judges Alston, Chafin and Senior Judge Haley


JAMIE COOKS, SR.

                                         MEMORANDUM OPINION*

v.       Record No. 1270-17-2                          PER CURIAM
                                            JANUARY 9, 2018

ALBEMARLE COUNTY DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

(Pamela R. Johnson, on brief), for appellant.

(Susan Baumgartner, Assistant County Attorney; Sheila C. Haughey,
Guardian *ad litem* for the minor child, on brief), for appellee.


     Jamie Cooks, Sr. (father) is appealing the orders terminating his parental rights to his child

and approving the foster care plan's goal of adoption. Father argues that the trial court erred by

finding that (1) he had not maintained contact for the past six months or planned for the child's

future, as required by Code § 16.1-283(C)(1); and (2) it was not in the child's best interests to give

father "a chance to establish a relationship with the child." Upon reviewing the record and briefs

of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm

the decision of the trial court. See Rule 5A:27.

BACKGROUND

     We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

---

    * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Ebony Herriera (mother) and father are the parents of a son born in July 2014. Father last saw the child when he was six months old.

On January 14, 2016, the Albemarle County Department of Social Services (the Department) removed the child from mother's care because she was homeless, suicidal, using marijuana, and failing to obtain medical care for the child.[1] On January 21, 2016, the Albemarle County Juvenile and Domestic Relations District Court (the JDR court) found that the child was neglected and entered a preliminary removal order.

At the time of the removal, father lived in Texas. Mother told the Department that she did not have father's contact information, but the Department later was able to obtain father's contact information. On February 8, 2016, the Department called father and informed him that the child was in foster care. Father indicated that he wanted a paternity test to ensure that the child was his son. On February 9, 2016, the Department sent a letter to father and included the contact information for father's attorney and the social worker.

On March 18, 2016, the Department filed a petition to establish paternity. On March 25, 2016, the JDR court ordered father to appear for paternity testing in Charlottesville on April 12, 2016. The order stated that the next hearing in the matter was on July 15, 2016. Father did not appear for paternity testing.

On July 14, 2016, father contacted the JDR court and told it that he could not attend the July 15, 2016 hearing. Father's counsel, but not father, appeared at the July 15, 2016 hearing. The JDR court scheduled the next hearing for December 7, 2016. The JDR court also ordered father to appear for paternity testing in Charlottesville on July 26, 2016. Father did not appear.

---

[1] The Department also removed another of mother's children from her care. The two children were placed in the same foster home.

On August 11, 2016, the social worker spoke with father and father's wife on the telephone. Father and his wife stated that they were interested in having the child placed with them if father was the biological parent of the child. The social worker informed them that the JDR court entered orders to establish paternity. The social worker obtained the name of the county where father lived in Texas so that paternity testing could be arranged through that county.

Father did not appear at the hearing in December 2016, but his counsel was present. The JDR court again ordered father to appear for paternity testing, which was arranged to be done in Texas. Father did not appear for the appointment on December 22, 2016. Another appointment was scheduled for January 19, 2017 in Texas. The social worker called father and told him the date, time, and location for the test, but father did not appear at that appointment either. The lab refused to reschedule any further tests since father missed several appointments. The social worker called father about the missed test, but had to leave a message. Father did not return her telephone call.

On April 26, 2017, father called the social worker. He received notice that the Department was terminating his parental rights. Father acknowledged that he had not done the paternity testing, but said that he wanted his son.

On May 17, 2017, father appeared at the termination hearing in the JDR court. This court appearance was his first in the matter, although his counsel was present for the previous hearings. At the conclusion of the evidence and argument, the JDR court terminated father's parental rights because father had not gone to any of the appointments for paternity testing and had not visited the child.[2] After the May 17, 2017 hearing, father never contacted the Department.

---

[2] Mother signed an entrustment agreement.

Father appealed the ruling to the circuit court. On July 20, 2017, the parties appeared before the circuit court. Father testified that his wife spoke with the social worker, and they "never got the right information" about the paternity testing. Father admitted that he did not read many of the documents sent to him and that he did not call the clerk's office about the paternity testing. He said that he worked a lot, and he thought his wife was getting the information. Father acknowledged that he never requested to visit with the child and did not provide financial support for the child. His wife testified that father submitted to testing on July 5, 2017, but the results were not available as of the court date. She said that the DNA testing "somehow fell through the cracks." She further admitted telling the guardian *ad litem* in April 2017 that father had not submitted to the paternity test because he worked a lot.

The Department presented evidence that the child was doing well in foster care. When the child was removed from mother's care, he was nonverbal, slept under the bed, and ate off the floor. While in foster care, he received speech therapy and was on track developmentally. The child was placed in a home with his half-brother, with whom he had a close relationship.

After hearing all of the evidence and argument, the circuit court terminated father's parental rights to the child pursuant to Code § 16.1-283(C)(1) and approved the foster care plan with the goal of adoption. This appeal followed.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Father argues that the trial court erred in terminating his parental rights pursuant to Code § 16.1-283(C)(1) and finding that he had not maintained contact or planned for the child's future for a period of six months. He contends he had to complete the paternity testing before he was offered any services. He further asserts that information about the paternity testing was confusing and inaccurate. He emphasizes that the circuit court stated in its ruling that it did not "necessarily hold against or contribute it against Mr. Cooks that he didn't make the first two [paternity] tests." The circuit court recognized that the "system can be confusing." However, the circuit court stated that it "did struggle with . . . [father's] ability or willingness or the showing that he made in order to try to maintain contact or plan for the future of the child."

Code § 16.1-283(C)(1) states a parent's parental rights may be terminated if

> [t]he parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition.

Here, the evidence proved that father never asked to visit with the child, nor did he make any plans for the child. The trial court found that father had "an ability to plan for his contact with the . . . child and for the future of the child, regardless of whether or not the paternity test was done, because he sort of had at least an inclination, and at best, an acceptance, that [the child] was his child." The trial court noted that father had not prepared for how he would be reintroduced into the child's life or how he would prepare a smooth transition for the child to live with him and his wife. The child had not seen father since he was six months old and had never met father's wife or her nine-year-old daughter. At the time of the hearing in the circuit court,

the child had been in foster care for eighteen months. The circuit court stated that it was "not unreasonable for [father] to have prepared for that particular future before coming to court today."

Furthermore, the evidence proved that father did not come to any of the hearings until the termination hearings in the JDR court and the circuit court. He had counsel and admitted speaking with his counsel prior to the termination hearings. He also admitted receiving, but not reading, all of the correspondence from the Department. In the Department's February 9, 2016 letter to father and in the foster care plans, the Department indicated that father had opportunities to be involved with the child, but father did not inquire about any of these opportunities.

Based on the evidence, the trial court did not err in finding that father did not maintain contact with the child or prepare for the child's future, as required by Code § 16.1-283(C)(1).

*Assignment of error #2*

Father argues that the trial court erred in finding that it was not in the child's best interests to give father a chance to establish a relationship with the child. Father testified that he wanted the child to live with him, as long as the child was his child. He emphasizes that the delay in the paternity testing should not be held against him. The trial court agreed that father's failure to participate in the first two paternity tests would not be held against father. However, father had multiple opportunities thereafter to seek paternity testing and did not do so until July 5, 2017, a couple of weeks prior to the circuit court hearing.

The evidence proved that father had no relationship with his child since he last saw the child when the child was six months old. Father also made no efforts to have a relationship with his child while the child was in foster care. "[P]ast actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold." Linkous v.

Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)).

Meanwhile, the evidence proved that the child was thriving and doing very well in foster care. The child had a close relationship with his half-brother, who lived in the same foster home. The trial court expressed concern over how a move to Texas, away from his half-brother, would impact the child.

Based on the record, the trial court did not err in holding that it was in the child's best interests to terminate father's parental rights.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.