UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, AtLee and Senior Judge Clements

CHASTITY DAVIS

MEMORANDUM OPINION[*]

v.     Record No. 1797-14-1                                    PER CURIAM
                                                            AUGUST 4, 2015

ISLE OF WIGHT COUNTY
  DEPARTMENT OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF ISLE OF WIGHT COUNTY
Robert H. Sandwich, Jr., Judge

(Robert W. Jones, Jr.; Jones & Jones, P.C., on brief), for appellant.
Appellant submitting on brief.

(Mark C. Popovich, County Attorney; Del Brown, Guardian *ad litem*
for the minor children; The Brown Law Firm, on brief), for appellee.
Appellee and Guardian *ad litem* submitting on brief.


Chastity Davis (mother) appeals an order terminating her parental rights to her four children.

Mother argues that the circuit court erred by ruling that there was sufficient evidence to (1) approve

the foster care goal of adoption because it was not in the children's best interests and mother had

made "significant progress towards reunification with her children;" and (2) terminate her parental

rights pursuant to Code § 16.1-283(C)(2) because mother had made "significant progress towards

the requirements set forth in the children's foster care plan." Upon reviewing the record and briefs

of the parties, we conclude that the circuit court did not err. Accordingly, we affirm the decision of

the circuit court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

In May 2012, mother had three minor children, who were eight, five, and one years old. Mother lived with Steven Hercher, who was the father of two of the children. The Isle of Wight County Department of Social Services (the Department) had been working with the family for years. It provided in-home counseling, referrals for substance abuse services, and referrals for mental health services. From 2008 until 2012, the children had been referred to Child Protective Services nine times because of alleged abuse from the parents. The police had responded to mother's home on several occasions to investigate allegations of child neglect, assault, use of a weapon, and domestic violence.

On May 23, 2012, the Department received a call regarding lacerations on mother's middle child. The child reported that her father, Hercher, cut her with a knife on her upper thigh. The Department removed the three children from the home and placed them in foster care.

On July 10, 2012, the Isle of Wight County Juvenile and Domestic Relations District Court (the JDR court) adjudicated the children as abused and neglected.

The Department recommended that mother complete a parental capacity evaluation and parenting classes. Mother completed the evaluation and a class. The Department also referred mother to counseling and substance abuse treatment. Mother enrolled in outpatient substance abuse counseling and worked with an in-home substance abuse counselor, who conducted random drug and alcohol screens. Mother had negative drug screens.

In January 2013, mother gave birth to her fourth child, who is also subject to this appeal. Hercher is the biological father. In March 2013, mother was incarcerated for assault of a law

enforcement officer. Mother signed a notarized statement entrusting the child's care to Heather Knoll. The child lived in a house with Knoll, Michael Hendrix and, reportedly, Hercher. On May 10, 2013, the Department learned that Hercher was arrested on May 9, 2013 for kidnapping, contributing to the delinquency of a minor, and unlawful wounding.[1] Hercher was intoxicated at the time of his arrest, and the child was present in the home during the domestic altercation. On May 10, mother agreed to place her youngest child in respite care with a certified foster parent since both parents were incarcerated. On May 21, 2013, the JDR court entered an emergency removal order.

On August 19, 2013, mother was released from incarceration. On August 21, 2013, mother admitted in a family partnership meeting that she needed "to work on herself before she is prepared to take custody of her children." She was uncertain about her ability to meet the children's needs.

In April 2014, mother and Hercher were living together. Since Hercher did not complete any recommended services, the Department had concerns about him having access to the children.

On April 1, 2014, the Department filed petitions to terminate mother's parental rights to her four children. On May 27, 2014, the JDR court terminated mother's parental rights to the four children. She appealed to the circuit court.

On July 22, 2014, the circuit court heard evidence and argument. The Department presented evidence that there were additional parenting classes that mother still needed to complete. In addition, the Department remained concerned about Hercher, and since mother was living with him, she was not in a position to have custody of the children. Mother acknowledged that she had not met all of the Department's requirements, but she testified that she had been working on them, even while she was incarcerated. At the conclusion of the hearing, the trial court determined that "while [mother] made efforts to remedy the circumstances which brought her children into care . . . ,

---

[1] Hercher was found guilty of contributing to the delinquency of a minor and unlawful wounding. The kidnapping charge was *nolle prosequied*.

she had not made significant strides . . . to substantially remedy the conditions which brought them into foster care . . . ." The circuit court terminated mother's parental rights pursuant to Code § 16.1-283(C)(2) and approved the goals of adoption.[2] This appeal followed.

ANALYSIS

Mother argues that the circuit court erred in concluding that the evidence was sufficient to terminate her parental rights pursuant to Code § 16.1-283(C)(2) and approve the permanency planning goals of adoption. She contends she had made significant progress toward meeting the Department's requirements.

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

The circuit court terminated mother's parental rights pursuant to Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

---

[2] This Court remanded the matter to the circuit court on May 11, 2015 for it to make a factual finding of whether the termination was in the children's best interests. On June 10, 2015, the circuit court entered an order stating that the termination of mother's parental rights was in the children's best interests.

- 4 -

Mother contends that despite being incarcerated for approximately six months, she complied with many of the Department's requirements. She attended meetings as requested. She was cooperative with the Department and showed concern about the children. She completed the parenting capacity evaluation and a parenting class. Mother argues that she made substantial progress in meeting the Department's goals.

However, the Department wanted mother to complete additional parenting classes. In addition, mother was residing with Hercher, who had not completed the Department's requirements. He previously told the Department that he did not need substance abuse services, counseling services, or psychosexual evaluation, even though they were recommended in his parenting capacity evaluation.

Prior to mother's incarceration and shortly after her release, she expressed uncertainty about whether she could meet the children's needs. The two oldest children have behavioral issues and require therapy. One of the children has severe emotional and behavioral issues. She exhibits impulsivity and hyperactivity, has oppositional defiant behavior, and can become verbally and physically aggressive. In September 2013, she required hospitalization due to her behavior. After her hospitalization, she has shown signs of improvement, but requires numerous services and constant supervision. The other children were doing well in foster care.

At the time of the circuit court hearing, the three oldest children had been in foster care for more than two years, while the youngest child had been in foster care for more than one year. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Although mother met some of the Department's goals, she did not substantially remedy the situation that led to the children being placed, and remaining, in foster care.  The circuit court did not err in terminating her parental rights and approving the goals of adoption.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

<u>Affirmed.</u>