COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Alston, Chafin and Senior Judge Haley


KAREN STANTON

MEMORANDUM OPINION*

v.      Record No. 1452-15-4                        PER CURIAM
                                                    APRIL 5, 2016

ALEXANDRIA DEPARTMENT OF
 COMMUNITY AND HUMAN SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
James C. Clark, Judge

(Kevin L. Wiggs, on brief), for appellant.

(James L. Banks, City Attorney; George McAndrews, Assistant City
Attorney; Steven A. Krieger, Guardian *ad litem* for the minor
children, on brief), for appellee.


Karen Stanton (mother) appeals the orders terminating her parental rights and approving the

goal of adoption. Mother argues that the trial court erred by finding that (1) termination of her

parental rights was in the children's best interests; and (2) "it was not reasonably likely that the

conditions which resulted in the neglect or abuse could be substantially corrected or eliminated to

allow the children's safe return to [mother] within a reasonable time." Upon reviewing the record

and briefs of the parties, we conclude that this appeal is without merit. Accordingly, we

summarily affirm the decision of the trial court. See Rule 5A:27.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Mother's two youngest children are the subject of this appeal.[1] The children were born in 2001 and 2005. The Alexandria Department of Community and Human Services (the Department) first became involved with the family in March 2009 due to allegations of neglect. The Department learned that mother and the children did not have a place to live. Mother had not been employed since 2007, and the oldest child was not attending school regularly. The Department arranged for the family to go to the Carpenter's Shelter, a homeless shelter in Alexandria. The Department gave mother gift certificates so she could purchase clothes for the children. It also gave her winter coats for the children. After two months of being at the shelter, mother and the children were asked to leave because mother did not follow the shelter's rules, including looking for and finding employment, supervising the children, and cleaning their room.

The Department referred mother to the Alexandria Mental Health Department for an intake assessment because she told them that she was depressed. Mother never scheduled an intake appointment.

After mother reported that the older child was prone to angry outbursts, the Department arranged for an assessment at the Alexandria Mental Health Center. In April 2009, the child was diagnosed with attention deficit/hyperactivity disorder. Mother refused to take the child to a psychiatrist because she did not think he needed medication.

The children lived with their biological father from August 2009 until spring 2013. In September 2013, the Department became involved with the family again because of alleged homelessness. The Carpenter's Shelter refused to take the family, and two other shelters were full. On September 11, 2013, the Department took custody of the children and placed them in therapeutic foster care.

---

[1] Mother also has older children who are no longer minors.

The children's foster care mother said that when the children arrived they were wearing inappropriate and dirty clothes. The youngest child's hair was "a disaster," and the foster care mother had to spend hours trying to fix it. The children were defiant and refused to follow the rules. The older child was violent and "aggressive." He broke numerous items in the foster care mother's house, such as a door, the telephone, and light switches. The child did not listen at school and was suspended. According to the foster care mother, "[h]is relationship with his teacher was horrible." They took the older child to a pediatrician, who referred him to a pediatric neurologist. The children also participated in counseling. After three months, the children were moved to another foster care home. They stayed at that home for a couple of weeks until they moved to their current foster care home in Stafford County.

The Alexandria Juvenile and Domestic Relations District Court (the JDR court) entered protective orders for the children on September 16, 2013. Despite the court's orders, mother refused to provide the Department with her contact information and did not arrange for a mental health assessment and parental capability assessment.

In November 2013, mother had supervised visits with the children in Alexandria, where she lived. The children's counselors monitored the visits and tried to provide mother with counseling during the visits. However, mother had difficulty recognizing when the children were becoming upset and did not soothe them. Initially, the visits were for two hours on a weekly basis, but they were reduced to ninety minutes and then to one hour. Mother missed several visits. Her last supervised visit in Alexandria was in February 2014.

When the children moved to Stafford County, the Department arranged for the visits to be closer to the children. At mother's request, the visitations were reduced from weekly to twice monthly because "the trip was too long for her." Then, the visits were reduced to monthly

because mother was "inappropriate" during visits and argued with the staff, which upset the children. The Department provided mother with transportation to and from the visits.

The Department referred mother to Dr. Christopher Bishop for a parental fitness evaluation. Mother cancelled three appointments with Dr. Bishop in November and December 2013. After the third cancellation, Dr. Bishop cancelled the referral. The Department made a second referral to Dr. Bishop. Mother cancelled or missed two appointments with Dr. Bishop in February 2014. Dr. Bishop cancelled the second referral. The Department made a third referral to Dr. Bishop. Over several days in June and July 2014, mother met with Dr. Bishop and participated in the evaluation. Dr. Bishop subsequently issued his report. With respect to her parenting capacity, Dr. Bishop noted that one of mother's weaknesses was a reversal of family roles because she tended to use the children to "meet her needs of love, assurance, and comfort." Dr. Bishop also reported that mother was "authoritarian and rigid." He concluded that she "presents with a moderate level of risk in her ability to parent her children." Dr. Bishop recommended that mother receive parenting counseling in a home-based setting, individual psychotherapy, parenting support group, job readiness training, and psycho-education on ADHD.

On August 21, 2014, the JDR court approved the foster care plans with the goal of adoption and terminated mother's parental rights. She appealed to the circuit court.

In January 2015, mother obtained full-time employment at a Safeway supermarket. She previously had obtained housing through the Alexandria Housing and Redevelopment Authority.

On February 9 and 10, 2015, the parties presented evidence and argument. At the conclusion, the circuit court took the case under advisement and continued the matter for six months. The trial court acknowledged that mother had made some progress and explained that it was giving mother an opportunity to prove that she can care for the children.

- 4 -

On August 11, 2015, the parties reappeared before the circuit court. Anne Henley, the owner and director of Family Solutions, testified about her involvement with the case since March 2015. She explained that she provided family reunification services, including intensive parent training and therapeutic visitation. Four intensive parenting sessions occurred as scheduled, and three sessions occurred on a modified basis due to mother being ill or arriving late. Twelve intensive parenting sessions did not occur for various reasons; however, the counselor indicated "there were just periods of time where she just appeared to kind of drop off the radar and didn't respond." Henley testified that mother could not follow through with simple requests, such as confirming her appointment and providing her work schedule. Henley concluded, "Progress has been particularly poor when basic expectations are placed on Ms. Stanton to communicate schedules and follow through with simple planning necessary to ensure continuity for parenting sessions as well as visitation for the children."

Mother also testified at the hearing. She provided information regarding her job and housing. She explained what she learned from the parenting sessions and why she missed several sessions. In addition, she discussed how well the visits with her children went.

At the conclusion of the August 11, 2015 hearing, the trial court found that mother was "unable to adequately care for the kids and that there's not a reasonable likelihood that that will occur within a reasonable period of time." The trial court approved the foster care plans with the goal of adoption and terminated mother's parental rights. It subsequently entered the final orders. This appeal followed.

ANALYSIS

Mother argues that the trial court erred in terminating her parental rights. She contends there was insufficient evidence to prove that the termination was in the children's best interests and that she could not remedy the situation. Mother asserts that since the children were placed in

- 5 -

foster care, she obtained housing and employment, participated in the parenting capacity evaluation, completed a mental health and substance abuse evaluation, and regularly visited with the children. Mother notes that the children have a good relationship with her and want to return home to her.

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

The trial court terminated mother's parental rights pursuant to Code § 16.1-283(B), which states that a person's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

"[S]ubsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 270-71, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

The Department had been involved with the family for years before it filed the petition to terminate mother's parental rights. It offered mother numerous services, including evaluations, counseling, therapeutic visitations, transportation, and financial assistance. At the end of the February 10, 2015 hearing, the trial court recognized the services offered and stated,

> And although the City on the one hand has bent over backwards to provide her with the tools to get her children back, Ms. Stanton apparently has felt over a considerable period of time that she doesn't need those tools, and has been unwilling to accept the services by and large that the City has been willing to offer.

However, despite mother's lack of cooperation, the trial court found that she had made some progress, including obtaining housing and employment. It decided to continue the case for an additional six months to see if mother could substantially remedy the situation and be in a position to have the children returned to her.

After hearing the evidence at the August 11, 2015 hearing, the trial court concluded that mother was not able to substantially remedy the situation. Despite the family services provided by Ms. Henley, mother did not avail herself of the services she needed to "get over the hump." As it was throughout the Department's involvement with the family, mother did not fully engage in the process. For example, she missed the majority of the scheduled visits and parenting sessions. She did not comply with basic requests.

At the time of the August 11, 2015 hearing, the children had been in foster care for twenty-three months. The trial court told mother that the case "can't drag out forever while we hope that some light's going to pop on and that you'll put yourself in a position to be the mother that the kids need to have." The trial court explained that "at the end of the day, these kids need some direction and they need some permanence."

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities."

- 7 -

<u>Kaywood v. Halifax Cty. Dep't of Soc. Servs.</u>, 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Based on the record, the trial court did not err in terminating mother's parental rights. The record supports the trial court's findings that termination was in the children's best interests and that, after twenty-three months, mother did not substantially remedy the situation which would have enabled the children to return to her care.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed.  Rule 5A:27.

<u>Affirmed.</u>