COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Russell and Senior Judge Frank

UNPUBLISHED

PHILLIP M. TALLMAN

v.     Record No. 0080-17-3

BRISTOL DEPARTMENT OF SOCIAL SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
AUGUST 1, 2017

FROM THE CIRCUIT COURT OF THE CITY OF BRISTOL
Sage B. Johnson, Judge

(Richard S. Buddington, Jr.; Watson & Buddington, P.C., on brief),
for appellant.  Appellant submitting on brief.

(Edward G. Stout; Nancyjean Bradford, Guardian *ad litem* for the
minor child; Bradford & Smith, PC, on brief), for appellee.
Appellee and Guardian *ad litem* submitting on brief.


Phillip M. Tallman (father) appeals an order terminating his parental rights to his child.

Father argues that the circuit court erred by finding that the Bristol Department of Social Services

(the Department) presented sufficient evidence to prove that father "had failed to 'provide or

substantially plan for the future of the child [his daughter] for a period of six months after the child's

placement in foster care'" as required by Code § 16.1-283(C)(1).  Upon reviewing the record and

briefs of the parties, we conclude that the circuit court did not err.  Accordingly, we affirm the

decision of the circuit court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

Father and Amber Whitley are the child's biological parents. The child was born in November 2014. When the child was less than three months old, Whitley overdosed on drugs and was taken to a local hospital. The Department was called, and the child was placed in foster care on February 4, 2015. The Department searched for relatives with whom the child could be placed and found Reed and Anna Tallman. Reed is father's brother. Reed and Anna Tallman qualified as foster parents and, on November 6, 2015, the child was placed in their home, where she continues to reside. At the time of the removal, father was not living with Whitley or the child. He had not seen the child since Christmas 2014. Initially, father filed for custody in Tennessee, but the Tennessee court denied his petition because Virginia had jurisdiction over the matter.

After the Department established paternity, it offered visitation between father and the child. He regularly visited with the child from March 2015 until November 13, 2015, although he missed visits for a month and a half while he was incarcerated. His mother frequently brought him to the visitations. At first, he fell asleep and did not interact with the child very much. His mother attempted to model appropriate parenting behavior for him and, as a result, his interactions with the child slightly improved.

The Department requested a home study for father's apartment in Tennessee, but it was not completed. Brianne Gregg, a human services specialist with the Department, testified that father's home study was not completed for "a number of factors," including ICPC's[1] "lengthy letter outlining lots of concerns that [ICPC] had and [its] request that Virginia not submit any home study

___

[1] ICPC refers to the Interstate Compact on the Placement of Children.

request again until all services were completed." Gregg also testified that father was already required to complete those services as a result of his parenting, psychological, and substance abuse assessment.

From the outset, the Department was concerned about father's propensity toward violence. Gregg testified that father was "very agitated" during visits. He had screamed and yelled at the social workers. Gregg further testified that father had a "very lengthy arrest record that includes lots of assaults and lots of substance abuse issues." The Department recommended several services for father. He completed his parenting, psychological, and substance abuse assessment. Father also completed the required Project Dads Program. Father did not complete the required Strengthening Families Program (although he attended six out of seven classes), nor did he attend any of the recommended anger management classes.

In November 2015, father and his mother (grandmother) were involved in an altercation that turned violent when he injured grandmother on her head. She had to go to the hospital because her head was bleeding significantly from the cut she received. Grandmother then obtained a protective order against him. On November 19, 2015, the City of Bristol Juvenile and Domestic Relations District Court (JDR court) also issued a child protective order, so father was prevented from having any contact with the child. He also could not have any contact, direct or indirect, with Reed and Anna Tallman, father's brother and sister-in-law, with whom the child resided. However, the JDR court judge told father that visitation could resume once he got help.

After November 13, 2015, father no longer visited with the child. He also stopped communicating with the Department and the guardian *ad litem*. Because father failed to maintain contact with the Department, provide suitable housing, and refrain from violent behavior, the Department filed a petition to terminate father's parental rights on April 8, 2016. The parties

appeared before the JDR court, and on July 13, 2016, the JDR court terminated father's parental rights.[2]  Father appealed to the circuit court.

On October 3, 2016, the parties presented their evidence and argument.  On December 2, 2016, the circuit court issued a letter opinion.  It held that it was in the child's best interests to terminate father's parental rights and that the Department presented clear and convincing evidence that father's parental rights should be terminated pursuant to Code § 16.1-283(C)(1).  On December 13, 2016, the circuit court entered an order reflecting its ruling.  This appeal followed.

ANALYSIS

Father argues that the evidence was insufficient to prove that he "had failed to 'provide or substantially plan for the future of the child [his daughter] for a period of six months after the child's placement in foster care'" as required by Code § 16.1-283(C)(1).

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted).  When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

The circuit court terminated father's parental rights pursuant to Code § 16.1-283(C)(1), which states:

> The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment, an entrustment agreement entered into by the parent or parents or other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of that child and that:

---

[2] The JDR court also terminated Whitley's parental rights.  She appealed the ruling to the circuit court, but subsequently withdrew her appeal.

> The parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. *Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition[.]*

(Emphasis added).

Father argues that he took "significant steps" to be reunited with his child. He completed the Project Dads program and six out of seven classes for the Strengthening Families Program. He notes that he obtained a driver's license and two vehicles. He testified that he was on disability due to his "nerves," but he was working with his doctor to decrease the amount of medication he was taking.

Father further argues that the protective order was the "largest obstacle to [him] securing custody or even visitation of his daughter throughout these proceedings." Father contends that the protective order provided him with "good cause" under Code § 16.1-283(C)(1) to explain why he had not maintained contact with his child. The protective orders prevented him from having any contact with grandmother, his brother and sister-in-law, and the child.

Contrary to father's arguments, the Department proved, by clear and convincing evidence, that father failed, without good cause, to maintain contact with the child. The existence of good cause is determined "in light of the facts of each case, with the best interests of the child as the guiding principle." Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986) (quoting Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230, 288 S.E.2d 405, 407-08 (1982)).[3] The circuit court emphasized that father's failure to maintain any contact with the child

---

[3] In Barkey, this Court found that a parent's mental illness did not constitute good cause because the parent "refused to accept treatment for her mental illness before and after the child

was "directly attributable" to father. While the protective order prevented father from contacting the child, under the facts of this case, the circuit court did not err in concluding that existence of the protective order did not provide father with good cause. The protective orders were the direct result of father's violence toward his own mother, who had been assisting father in building a relationship with the child. "[P]ast actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold." Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987). In light of father's history and the protective orders in existence because of father's previous violent outbursts, the circuit court's determination that father failed, without good cause, to communicate with his child was not plainly wrong.

Father also argues that he worked to prepare for his child's future even though he could not contact her. Father testified that he attempted to remain in contact with the Department and found suitable housing. Father specifically testified that he called the Department "many, many, many times" and "left a million messages," but that Gregg never called him back. Gregg disagreed with this statement and said that father did not call or leave any messages. The circuit court noted this discrepancy between the witnesses and stated, "[E]ven if the Court were to believe his testimony, which the Court does not, several phone attempts over the span of over one year does little to show efforts by [father] to maintain contact much less 'provide or substantially plan for the future of the child,'" as required by Code § 16.1-283(C)(1).

Moreover, although father testified that he recently obtained a two-bedroom apartment and furnished a bedroom for his child, no information relating to father's new apartment in Virginia was

---

was placed in foster care, and that at the time of trial, had dropped out of the [treatment program] to accept employment." Barkey, 2 Va. App. at 670, 347 S.E.2d at 192.

In Toombs, the Supreme Court of Virginia upheld the termination of parental rights where the Department initiated the proceedings that led to visitations being discontinued and was justified in using that fact to support the ultimate termination of parental rights. Toombs, 223 Va. at 230-31, 288 S.E.2d at 407-08.

disclosed until trial in the circuit court because father chose to cease communicating with the Department. Therefore, the circuit court did not err in finding that father had no substantial plan for the child's future and, thus, the evidence was sufficient to terminate father's parental rights pursuant to Code § 16.1-283(C)(1).

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

<u>Affirmed.</u>