COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Russell and Senior Judge Frank


MARIAH SMITH

v.      Record No. 1310-17-4

WINCHESTER DEPARTMENT OF
 SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
FEBRUARY 6, 2018


FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
Alexander R. Iden, Judge

(Jason E. Ransom; Ransom & Silvester, on brief), for appellant.

(Beth M. Coyne; Martin R. Scheller, Guardian *ad litem* for the minor child; Winchester Law Group, P.C.; Williams & Bell, on brief), for appellee.


Mariah Smith (mother) appeals the orders terminating her parental rights and approving the

foster care plan's goal of adoption. Mother argues that the trial court erred by finding that the

evidence was sufficient to terminate her parental rights pursuant to Code § 16.1-283(B) and (C)(2).

Upon reviewing the record and briefs of the parties, we conclude that this appeal is without

merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

The Winchester Department of Social Services (the Department) has been involved with

mother since 2011. Mother has a history of mental health and substance abuse issues. In

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

September 2015, mother gave birth to K.S. Mother admitted using heroin prior to the child's birth.[1] K.S.'s cord blood tested positive for opiates and alcohol. The Department removed the child from mother's care two days after the child's birth.

On October 27, 2015, the Winchester Juvenile and Domestic Relations District Court (the JDR court) adjudicated K.S. as an abused and neglected child. The Department required mother to complete a substance abuse assessment and follow any recommendations, as well as test negative for illegal substances. The Department also required mother to provide a safe and stable home for K.S. and obtain employment in order to financially meet K.S.'s basic needs.

From October 29, 2015 through July 26, 2016, mother was incarcerated for felony narcotics distribution and felony conspiracy, narcotics distribution. When she was released from jail, mother spoke with the Department about the substance abuse assessment. The Department provided mother with a list of agencies. Mother scheduled an initial appointment with one of the agencies, but she did not appear for her appointment and did not reschedule.

Once mother was released from jail, the Department arranged for her to have visits with K.S. At first, mother appeared at the scheduled time, but then, she started coming late and eventually stopped coming to the visits.

In October 2016, mother tested positive for marijuana. In January 2017, mother tested positive for cocaine. Mother refused to be tested on eleven other dates, so the Department considered those positive tests.

Mother did not obtain stable housing or employment. Mother reported staying with her mother or with friends. At the time of the circuit court hearing, mother was living at the Friends of Guest House in Alexandria. Mother worked at a couple of different places for a short amount

---

[1] Mother admitted that she started using heroin weekly in February 2015. Mother tested positive for opiates in February, June, and August 2015. She also tested positive for oxycodone in June 2015.

of time, but she did not provide any documentation to prove that she had obtained stable employment.

The Department investigated relative placement for K.S. in the summer and fall of 2016. A paternal aunt and the paternal grandparents, all of whom lived out of state, expressed an interest in custody. The Department arranged home studies through the Interstate Compact on the Placement of Children (ICPC). Subsequently, the paternal aunt did not follow through with communication from the Department. The paternal grandparents told the Department that they supported the foster parents adopting K.S.

On February 7, 2017, the JDR court terminated mother's parental rights and approved the foster care plan's goal of adoption.[2] Mother appealed to the circuit court.

After hearing the evidence and argument, the circuit court found that it was in the child's best interests to terminate mother's parental rights. The circuit court also approved the foster care plan's goal of adoption. This appeal followed.

ANALYSIS

Mother argues that the circuit court erred in terminating her parental rights pursuant to Code § 16.1-283(B) and (C)(2). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

---

[2] The JDR court also terminated the biological father's parental rights. Father appealed to the circuit court. After hearing the evidence and argument, the circuit court terminated father's parental rights.

*Code § 16.1-283(B)*

Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

"[S]ubsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 270-71, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)). "[P]ast actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold." Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)).

Mother acknowledges that K.S. was born exposed to illegal substances, but asserts that "[t]here was no evidence that K.S. was affected in any way by substance abuse on the part of [mother]." Mother contends the evidence was insufficient to prove that the conditions resulting in abuse or neglect were not substantially corrected or eliminated. She states that she participated in a drug rehabilitation program while she was incarcerated, but the Department was unable to confirm her participation. She also emphasizes that she did not test positive for heroin after she was released from jail.

Despite mother's arguments, the Department presented proof that mother had a long history of substance abuse. Mother admitted using heroin two days before K.S.'s birth and throughout her pregnancy. Mother did not participate in a substance abuse assessment once she was released from jail. On eleven occasions, mother refused to be drug screened, which the Department considered positive tests. Although mother did not test positive for heroin, she did test positive for marijuana and cocaine after she was released from jail. Mother continued using illegal drugs after the Department placed K.S. in foster care.

Based on the totality of the evidence, the trial court did not err in terminating mother's parental rights pursuant to Code § 16.1-283(B).

### Code § 16.1-283(C)(2)

A court may terminate parental rights if

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms, 46 Va. App. at 271, 616 S.E.2d at 772 (quoting Winslow, 40 Va. App. at 562-63, 580 S.E.2d at 466).

Mother argues that she made progress after the Department placed K.S. in foster care, but the evidence does not support her argument. For example, mother notes that after she was

released from jail, she visited K.S. weekly in August 2016 and attended three visitations in September 2016. However, the Department's records showed that she was late to two of the three visitations in September. Since mother was late, the Department asked her to confirm the visits. In October 2016, she did not appear for three visits. In November 2016, mother did not confirm, so two visits were cancelled. In addition, she was late to one visit in November. In December 2016, mother did not confirm, so two visits were cancelled. In January 2017, mother did not confirm, so three visits were cancelled. Furthermore, as noted above, mother did not resolve her substance abuse issues. She did not attend a substance abuse assessment, and she tested positive for marijuana and cocaine. Mother did not show that she had resolved any of the issues that led to the child being placed, and remaining, in foster care.

At the time of the circuit court hearing, K.S. had been in foster care for approximately twenty-one months. The Department presented evidence that the child was doing well in foster care. K.S. has been living with the same foster parents since she was four days old, and her foster parents wished to adopt her.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Considering all of the evidence, the trial court did not err in terminating mother's parental rights pursuant to Code § 16.1-283(C)(2).

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.

- 6 -